**GYRO ENGINEERING CORPORATION,**
a California corporation, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 22496.

United States Court of Appeals
Ninth Circuit.

Oct. 9, 1969.

438

the district court denying its claim for refund of moneys paid pursuant to the Commissioner's determination of deficiencies in income tax for the years 1959 and 1960.

The dispute arose out of the transfer of three apartment house properties to Gyro by its two principal stockholders, Chris Mowry and Natalie, his wife.[1] In reporting income Gyro declared that the property was acquired by purchase and calculated depreciation based upon the portion of the purchase price allocated to improvements. 26 U.S.C. §§ 167 (g), 1011, 1012. The Commissioner rejected Gyro's purchase-price-depreciation basis and, applying the Mowrys' substantially lower basis, assessed deficiencies. The district court, declaring that the transaction in substance was little more than "a paper tax device or 'gimmick'," concluded that the transfer was not pursuant to sale but rather was a contribution by the Mowrys to Gyro's capital; it applied 26 U.S.C. § 362(a) (2), which provides that a transferee's basis for property so acquired remains the same as "in the hands of the transferor." It entered judgment against Gyro. We reverse.

On the surface the transaction had all the appearances of a present sale. C. I. R. v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965). The "Agreement of Sale," pursuant to which the property was conveyed by grant deed, specified a consideration and imposed upon Gyro an unconditional obligation to pay. It provided that the purchase price was $3,164,000 and required Gyro to make this sum by paying $30,000 down, assuming and paying several trust deeds outstanding against the property, and the remainder of $2,343,361.50, without interest, in semi-annual installments of $30,000 each. In addition, Gyro executed to the Mowrys a series of negotiable promissory notes reflecting this unpaid balance.

William Lee McLane (argued), Nola McLane of McLane & McLane, Phoenix, Ariz., for appellant.

David English Carmack (argued), Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Harry Baum, Attys., Dept. of Justice, Washington, D. C., Wm. Matthew Byrne, Jr., U. S. Atty., Loyal E. Keir, Robert T. Jones, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS and KOELSCH, Circuit Judges, and von der HEYDT,* District Judge.

KOELSCH, Circuit Judge:

The taxpayer, Gyro Engineering Corporation, appeals from a judgment of

* Honorable James A. von der Heydt, United States District Judge, Anchorage, Alaska, sitting by designation.

1. The Mowrys owned and controlled less than 80% of Gyro's stock; namely 55%.

Of course these external appearances were not conclusive in determining for tax purposes the true nature of the transaction; but the more extensive and penetrating examination made by the district court—as reflected in its findings—discloses no valid basis for that court's ultimate legal conclusion.[2]

The evidence manifests that when the agreement was made, it was reasonable to conclude Gyro would make the payments as specified. At that time Gyro owed no debts and possessed assets in the form of a claim against the County of Los Angeles, the proceeds of which would be sufficient to make the down payment.[3] The apartments were income producing and the rentals, based upon past experience, would be sufficient not only to meet all Gyro's overhead, but also to pay the installments of purchase price as they fell due.

Viewed in this light the finding that Gyro was a "thin" corporation—that is, one having a high ratio of debt to capital—has no force, for that condition would not tend to show that Gyro's agreement to pay was fictitious, unrealistic or beyond its ability to perform.

Moreover, Gyro actually did make the payments until rendered unable to do so because of the diversion of its moneys to satisfy the asserted tax deficiencies. In that regard the government stipulated "That said $60,000 annual payments were made through 1963, or a total of $300,000. On April 30, 1964 Gyro Engineering Corporation paid the deficiencies asserted by the C. I. R. for the taxable year herein plus interest thereon, or a total of $103,277.98, and was unable to make the 1964 annual payments of $60,000 required by said agreement of sale. No annual payments for 1965 were made. Likewise the semi-annual payment due January 1, 1966 was not made."

Thus, this case is unlike Aqualane Shores, Inc. v. C. I. R., 269 F.2d 116 (5th Cir. 1959), and Burr Oaks Corp. v. C. I. R., 365 F.2d 24 (7th Cir. 1966), in which judgments against the taxpayer-transferees were affirmed on appeal; there the financial condition of the transferees and the non-revenue producing capacity of the subject properties rendered extremely unlikely the prospect that the transferors would be paid or that they could expect to be paid. Rather, the case resembles, indeed is strikingly like, Sun Properties v. United States, 220 F.2d 171 (5th Cir. 1955), and Piedmont Corporation v. C. I. R., 388 F.2d 886 (4th Cir. 1968), wherein the appellate courts, emphasizing the properties' self liquidating potential, reversed judgments against the transferees.

The trial court's finding as to the market value of the property in no way supports its conclusion or militates against a sale.[4] Even assuming that the agreed purchase price was excessive in relation to market value, the terms of payment were such that the government's own expert, Arthur Halsted, acknowledged that "the hypothetical aver-

---

2. The trial court's "Findings of Fact and Conclusions of Law" (276 F.Supp. 454) combines both its decision with findings (F.R.Civ.P. 52(a))—. The findings are far from models and some run counter to facts which the parties formally stipulated. There was no issue concerning the meaning of the stipulated facts and the court should not have interpreted them.

Under these circumstances we would be entirely justified in resorting to the stipulations insofar as the findings conflict with them. However, we have not done so but have accepted and based our decision upon those findings that have evidentiary support.

3. The award amounted to $30,896.65; on receipt of this sum Gyro in March, 1959, paid the same to the Mowrys as the down payment.

4. The entire statement on that subject is "Both plaintiff and defendant presented expert evidence on the fair market value of the properties at the time of transfer. While this evidence is in part conflicting, after careful consideration the court is inclined to the view that the recited 'price' was somewhat excessive in relation to fair market value."

age investor" would have entered into the agreement.[5]

The court's further findings that the transaction was "principally 'tax motivated'" and that "the purported sale was in no sense a bargained or arms length transaction" do not tend to show that no sale occurred. "Tax reduction is not evil if you do not do it evilly." Murphy Logging Co. v. United States, 378 F.2d 222, 223 (9th Cir. 1967). Tax consequences of course are an important consideration in most commercial transactions, but the mere fact that the transaction is arranged in such a way that these consequences are highly favorable to one or some of the parties affords the Commissioner no license to recast it into one of less advantage; that merely serves as a reminder to him to look closely for indicia of a transaction of a different sort. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355 (1935). The same is true in a situation where one of the parties is in a more advantageous position than the other and can dictate terms; there, too, the arrangement must be given close scrutiny to determine whether such party employed his advantage to evade taxes. Sun Properties v. United States, *supra*.

 The remaining question is quickly answered.' Gyro had paid the Mowrys, as down payment on the Agreement of Sale, the entire proceeds of the award received from Los Angeles County in connection with the latter's condemnation suit. The sum amounted to approximately $30,000 and exceeded Gyro's cost basis in the condemned property by some $22,000. In reporting income, Gyro treated this gain as non-taxable under 26 U.S.C. § 1033(a) (3) (A) and (B), the pertinent provision of which in substance is that no gain to a taxpayer shall be recognized upon an involuntary conversion of property if he makes timely use of money received to purchase like property. The district court held the statute inapplicable on the sole ground that the Mowry-Gyro transaction was a contribution to capital. However, since we have concluded that the transaction was a sale, it follows that this gain should not be taxed.

The judgment is reversed and the cause remanded to the district court with direction to enter judgment for Gyro consistent with this opinion.

---

5. Halsted estimated the value of the property at from $2,000,000 to $2,415,000; the figure given by John Vaughan, Gyro's skilled witness, was $2,985,000. These amounts represented present cash value. We deem it significant that the consideration specified in the Agreement reflected a "time" purchase price. The difference between that sum and those of the experts could well be regarded as "built in" interest. But, since no such issue was raised below and both parties adopted an "all or nothing" approach, we do not choose to pursue the matter.