**A. R. LANTZ CO., Inc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 23285.

United States Court of Appeals, Ninth Circuit.

March 26, 1970.

As Amended on Denial of Rehearing April 29, 1970.

---

16. See Laidlaw Corp. v. NLRB, 7 Cir. 1969, 414 F.2d 99.

made to a corporation created debt, or constituted capital contributions.

Taxpayer appeals from an adverse judgment of the United States District Court wherein he sought recovery of taxes paid pursuant to notice of deficiency and assessment. Our jurisdiction on appeal is founded on 28 U.S.C. § 1291.

The dispute arises from tax returns filed for the fiscal years ending in February of 1963 and 1964. The facts were summarized as follows by the trial judge:

"The plaintiff [taxpayer] was incorporated on June 1, 1955. Its predecessor was an equal partnership of [A. R.] Lantz and [Gus D.] Vellis doing business under the name of A. R. Lantz Co. During the two months prior to incorporation, David Cornman advanced $51,000 to the partnership. It was understood by all concerned that this sum represented the value of a one-third interest in the partnership and was made in anticipation of the incorporation. The three individuals agreed that upon incorporation of the plaintiff, each would receive $15,000 of common stock as partial consideration for his interest in or claim against the partnership and that the balance of this interest or claim would be a loan to the plaintiff.

"On May 31, 1955, the three individuals had the following interests in or claims against the partnership:

Eugene J. Brenner, of Janin, Morgan, & Brenner, San Francisco, Cal., for appellant.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Jerry R. Stern, Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HAMLIN and WRIGHT, Circuit Judges.

BARNES, Circuit Judge:

This action deals with the oft-litigated tax issue of whether certain advances

|  | Lantz | Vellis | Cornman |
|---|---|---|---|
| Equity | $46,768.08 | $46,768.08 | |
| Debt | | $10,005.00 | $51,000.00 |

At the time of incorporation the principal assets of the partnership were approximately $120,000.00 of accounts receivable and approximately $60,000.00 of inventory. The principal liabilities were $45,000.00 of notes payable and the loan payable to Cornman. On June 1, 1955, all the partnership assets and liabilities were transferred to the plaintiff. The journal entry reflecting the transfer

shows $45,000 in capital stock subscribed plus the following amounts due to the three shareholders:

| Cornman | $36,000.00 |
|---|---|
| Vellis | $41,773.08 |
| Lantz | $31,768.08 |

"The books of the corporation in an account numbered 204 and entitled

'Amount Due Officers and Employees', reflect the amounts set in the journal entry, above. However, notes dated June 1st, 1955, were issued to the shareholders in the following amounts:

| 1 | Lantz |     | $46,768.08 |
|---|-------|-----|------------|
| 2 | Vellis | (a) | 46,768.08 |
|   |       | (b) | 10,005.00 |
| 3 | Cornman |   | 51,000.00 |

Said notes bore interest at 7% per annum and were due on June 1, 1960. It is apparent that the notes, less a subscription by each shareholder to $15,000 worth of stock, equal the amounts due the shareholders as set forth in the books of the corporation. There is, however, some confusion as to when the various notes were delivered to the individuals. * * * In addition there seems to have been a substantial delay between the subscription for the stock and its actual delivery.

"Various small loans were made to plaintiff by each of the shareholders during the first years of operation. On January 30, 1957, stock was finally issued to Lantz, Vellis and Cornman. Notes 1, [2 (a)], and [3] above were cancelled and new notes in the amounts of $31,768.08 for Lantz and Vellis and $36,000.00 for Cornman were issued. Note 2(b) to Vellis had previously been paid off by the plaintiff. In any event, by July 31, 1957, each shareholder owned $15,000 worth of stock and was owed $36,000 by the corporation.

"None of the notes contained an acceleration clause. * * * [I]nterest payments were made to the noteholders, though not always at the stipulated rate or time. No payments of principal were made after equalization was achieved.

"On September 15, 1958, Lantz and Vellis agreed to buy out Cornman. The books reflect that the corporation purchased the stock by obtaining loans from a bank and from Lantz and Vellis. Cornman's stock certificate was never cancelled. The plaintiff's records show that on October 1, 1959, new $60,000 notes were issued to Lantz and Vellis to cover the new full amount of their loans to the plaintiff. According to the books these notes were not issued until May of 1960. There was never any sinking fund for the retirement of the notes or any collateral security.

"The corporation never paid any dividends. The noteholders were the shareholders and the officers of the plaintiff. The noteholders individually guaranteed the indebtedness of the plaintiff to the Bank of America and subordinated their loans to any bank lending." (C.T. 45–48, as amended by C.T. 59–60.)

In its income tax returns for the fiscal years ending in February 1963 and 1964, taxpayer claimed deductions for interest paid to Lantz and Vellis. The Internal Revenue Service audited the returns, disallowed said deductions, and assessed additional taxes. Taxpayer paid the assessments plus interest and filed a refund claim. This litigation resulted when the Internal Revenue Service took no action for six months on that claim.

In upholding the Commissioner, the trial court adopted the position that if economic realities make it clear that the advances were placed at the risk of the business rather than as definite obligations payable in any event, they must be recognized as equity rather than debt for tax purposes. (C.T. 56.) Thus, the court, looking beyond the form of the advances, engaged in a detailed analysis of the facts to determine what was really in the minds of the parties when making the advances.

Taxpayer makes two primary attacks on the decision of the trial court: (1) that the legal standard employed was erroneous, and (2) that the evidence does not support the decision. According to taxpayer, if the form of an advance is that of debt, the court should treat it as debt unless it is a sham, a tax subterfuge or a transaction wholly without substance. Moreover, taxpayer argues that analysis of the evidence involves a mixed question of law and fact and urges that the present record discloses that the parties clearly intended the advances to be debt. We disagree, and affirm.

## I.

Proper consideration of the taxpayer's first contention requires a short review of Ninth Circuit authority on the debt-equity issue.

A study of the cases reveals that there has been general conformity with the following Supreme Court pronouncement:

"There is *no one* characteristic, not even exclusion from management, which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts." (John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 530, 66 S.Ct. 299, 90 L. Ed. 278 (1945) (emphasis supplied).)

This court has identified *eleven* factors which to varying degrees influence resolution of the debt-equity issue:

"They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation and management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stock holder; (10) payment of interest only out of 'dividend' money; (11) the ability of the corporation to obtain loans from outside lending institutions." (O. H. Kruse Grain & Milling v. Commissioner of Internal Revenue, 279 F.2d 123, 125–126 (9th Cir. 1960).)

When a lower court has overemphasized one of these factors, this court has consistently been disposed to reverse. *See* Gyro Engineering Corp. v. United States, 417 F.2d 437 (9th Cir. 1969); Murphy Logging Co. v. United States, 378 F.2d 222 (9th Cir. 1967); Miller's Estate v. Commissioner of Internal Revenue 239 F.2d 729 (9th Cir. 1956); *cf.* Lundgren v. Commissioner of Internal Revenue, 376 F.2d 623 (9th Cir. 1967).

(In *Lundgren* there was no reversal of the lower court because the lower court had not decided the debt-equity issue; however, the court of appeals did specifically indicate that one or two factors alone could not be controlling.) *See also* Earle v. W. J. Jones & Son, 200 F.2d 846, 850 (9th Cir. 1952). Indeed, there seem to be

"* * * no rules of thumb by which to determine a debt versus equity question * * *. The answer depends on the particular circumstances of each case * * *." (Lundgren v. Commissioner, *supra,* 376 F.2d at p. 626.)

Certain of the Ninth Circuit cases, *e. g.,* Taft v. Commissioner of Internal Revenue, 314 F.2d 620 (9th Cir. 1963); Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F.2d 222 (9th Cir. 1961); Wilshire & Western Sandwiches v. Commissioner of Internal Revenue, 175 F.2d 718 (9th Cir. 1949); Maloney v. Spencer, 172 F.2d 638 (9th Cir. 1949), when read alone, might suggest that the most important of the eleven factors is the objective intent of the parties. That is what taxpayer would have us believe. (Brief for Appellant at p. 18.) *See also* J. S. Biritz Construction Co. v. Commissioner of Internal Revenue, 387 F.2d 451 (8th Cir. 1967). Ninth Circuit authority, however, considered as a whole, is to the contrary.

Although the inquiry of a court in resolving the debt-equity issue is primarily directed at ascertaining the intent of the parties, Taft v. Commissioner, *supra;* Los Angeles Shipbuilding & Drydock Corp. v. United States, *supra;* Wilshire & Western Sandwiches v. Commissioner, *supra;* Maloney v. Spencer, *supra,* a distinction must be made between *objective* and *subjective* expressions of intent. An objective expression of intent, as contained in the documentation of an advance of money, is generally not to be afforded special weight. It alone cannot be controlling of the debt-equity issue. However, analysis of the factors previously enumerated, *including*

to subjective resolution of the ultimate the objective expression of intent, leads issue: Whether the parties in fact intended the advance to create debt rather than equity. Earle v. W. J. Jones & Son, *supra,* 200 F.2d at pp. 849–850. As was recognized in Wilshire & Western Sandwiches v. Commissioner, *supra,* 175 F.2d at p. 721, in resolving a debt-equity question we must deal " * * * with substance and reality and not mere form, [that being] a requirement in the field of taxation." "Pure gimmicks of form to shield the real essence of a transaction" cannot control. Murphy Logging Co. v. United States, *supra.*

The following excerpt from the district court's opinion demonstrates that the court applied the proper legal standard:

"As I interpret the *Wilshire* [*supra*] case and its successors, the important intent is whether you feel that your advance is to be at the risk of the business or is to be a definite obligation payable in any event. Such an intent cannot be determined merely by understanding what the parties decided to call their advancements. This intent must be determined by looking at the various factors discussed above and weighing them to determine what was really in the minds of the parties making the advances." (C.T. 56–57.)

## II

■ Taxpayer maintains that the ultimate determination of the debt or equity issue is a mixed question of law and fact; however, taxpayer urges that even if it is a factual issue, the trial court's decision must be overturned because that decision is clearly erroneous. We disagree.

The determination of debt or equity is considered by this court to be a question of fact which, once resolved by a district court, cannot be overturned unless clearly erroneous. Gross v. Commissioner of Internal Revenue, 401 F.2d 600, 603–604 (9th Cir. 1968); Los Angeles Shipbuilding & Drydock Corp. v. United States, *supra,* 289 F.2d at p. 227; O. H. Kruse Grain & Milling v. Commissioner, *supra,* 279 F.2d at p. 125; Earle v. W. J. Jones & Son, *supra,* 200 F.2d at pp. 847, 851. *But see* Taft v. Commissioner, *supra,* 314 F.2d at p. 622 (dictum, since the decision of the lower court was held to be clearly erroneous).

With the previously enumerated factors in mind, we cannot say that in this case the trial court was clearly erroneous in determining that the advances in question were intended by the parties to be at the risk of the business. More specifically, after reviewing the entire evidence we are left with the definite and firm conviction that the District Court's findings of fact are not clearly erroneous to the extent that they reflect the following: There were maturity dates for the notes but the dates were extended and principal was paid only in exceptional circumstances; the notes were not protected by collateral, an acceleration clause, or a sinking fund; "noteholders" had a right to enforce payment but there was considerable testimony that payment would not be enforced; there was a complete identity of interest between the parties; the notes were quickly subordinated to the only other creditor; shareholders never received dividends but did receive somewhat irregular interest on their notes; and the notes for the most part were in proportion to shareholdings. (C.T. 57.) In addition, we find particularly significant the trial court's finding that there was " * * * an atmosphere created by the testimony which indicates that all advances were treated in the same way." *Id.*

Judgment affirmed.

As so amended and modified, we concur in the opinion. The Petition for Rehearing is denied and the Suggestion for Rehearing in Banc is rejected.