**Rudolph A. HARDMAN, Frances N. Hardman and Hardman, Inc., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

Nos. 86–5979, 86–5980.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1987.

Decided Sept. 18, 1987.

Law Offices of Roger A. Saevig, Roger A. Saevig and Marc J. Jennings, Irvine, Cal., for plaintiffs-appellants.

Deborah Mybe, Washington, D.C., for defendant-appellee.

Before BROWNING, Chief Judge, TANG and REINHARDT, Circuit Judges.

TANG, Circuit Judge:

Rudolph A. and Frances N. Hardman and Hardman, Inc. appeal district court decisions upholding tax deficiencies assessed by the Internal Revenue Service. The taxpayers characterized a $109,568 payment by Hardman, Inc. as part consideration for the purchase of property from Mrs. Hardman. The Hardmans treated the payment as capital gain and Hardman, Inc. added the payment to its basis in the property. The IRS characterized the payment as a dividend from Hardman, Inc. to Frances Hardman taxable as ordinary income to Mrs. Hardman and improperly added to the corporation's basis on resale.

## I.

Frances Hardman owns twenty-five percent of Hardman, Inc. Together, Mr. and Mrs. Hardman own eighty-nine percent. In February, 1968, Frances Hardman purchased Hale Field, a 100 acre tract of undeveloped land, for $225,000. She made a downpayment and executed a secured promissory note for the remainder of the purchase price. Unable to keep up with the payments, she conveyed the property to Hardman, Inc. in 1972. By this time, Mrs. Hardman had made three annual payments on the promissory note. Hardman, Inc. reimbursed Mrs. Hardman for the three annual payments and the down payment; assumed the promissory note; and executed the following contract:

> In consideration of Frances N. Hardman selling her one hundred (100) acres of Hale Field property to Hardman, Inc. at her cost, Hardman, Inc. hereby agrees to pay Frances N. Hardman one-third of any net profit that Hardman, Inc. may derive from said property.

The contract appeared on corporate stationery, and was signed by Rudolph Hardman as president.

Hardman, Inc. later purchased twenty acres of land adjoining Hale Field. In 1977, the corporation resold the property, including the additional twenty acres, for $600,000. It paid Mrs. Hardman $109,568, one third of the net profit attributable to the 100 acres of Hale Field. The Hardmans reported the payment as gain from the sale of real property and took a corresponding capital gains deduction. Hardman, Inc. added the payment to its basis in the property and calculated its capital gains accordingly.

The IRS assessed deficiencies against the Hardmans and Hardman, Inc. The taxpayers paid the deficiencies and filed claims for refunds. After the IRS took no action on the claims, the Hardmans and Hardman, Inc. each filed suit in district court. The cases were consolidated and on March 31, 1986, the court entered judgment for the United States.

The district court concluded that the 1972 transaction between Mrs. Hardman and Hardman, Inc. was an equity investment by Mrs. Hardman in the corporation and that the 1977 payment was a dividend taxable as ordinary income. The court reasoned that the difference between a stockholder and a creditor is that the stockholder accepts the corporate risk of loss in return for possible profit participation. The creditor does not undertake such risk. The court concluded that the 1972 transaction more closely resembled a contribution to capital because the instrument executed by Hardman, Inc. did not contain the traditional indicia of a debt instrument: "an unconditional obligation to pay a principal sum certain, with interest, on or before a fixed maturity date not ambiguously remote in the future." The court held that "Mrs. Hardman and Corporation are essentially participants in a joint venture with Mrs. Hardman contributing the capital...." The Hardmans and Hardman, Inc. timely appeal.

## II.

Substance, not form, controls the characterization of a taxable transaction. *Gregory v. Helvering*, 293 U.S. 465, 469–70, 55 S.Ct. 266, 267–68, 79 L.Ed. 596 (1935). Courts will not tolerate the use of mere formalisms solely to alter tax liabilities. *CIR v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945); *Peterson v. CIR*, 380 F.2d 1, 2 (9th Cir. 1967). On the other hand, we recognize that tax consequences are an important consideration in many commercial transactions and the mere fact that a bona fide transaction is arranged in such a way that it confers tax benefits does not invalidate the transaction. *Gyro Eng'g, Corp. v. United States*, 417 F.2d 437, 440 (9th Cir. 1969).

Whether the $109,568 payment in 1977 was in satisfaction of an obligation arising from a sale or a dividend cannot be viewed in isolation but must be considered in the context of the overall transaction. The parties agree that the payment correlates to the 1972 property transfer. In this context, characterization of the payment turns on the nature of the property transfer. The Hardmans have characterized this transaction as a sale of property financed in part by a loan to the corporation. Mrs. Hardman's inability to keep up with the payments serves as a valid business reason for transferring the land in exchange for uncertain future profits. Courts closely scrutinize the economic reality of such transactions to determine whether the taxpayer's characterization is genuine or whether the transaction was, as the IRS contends here, a sale in name only. *See Fin Hay Realty Co. v. United States*, 398 F.2d 694, 697 (3d Cir.1968). If a transfer by a shareholder to her corporation is found to be an equity investment, payments of "interest" or "principal" by the corporation will be treated as constructive dividends or redemptions. *See* B. Bittker & J. Eustace, *Federal Income Taxation of Corporations and Shareholders* ¶ 7.05[3] (1979). This is because Congress has chosen to tax distributions to shareholders of corporate earnings and profits at ordinary income tax rates. We cannot condone taxpayer attempts to bleed off corporate profits at capital gains rates. On the other hand, Congress has chosen to tax gains from the sale of property at lower capital gains rates. We will not permit the IRS to characterize genuine gains from the sale of property as ordinary income.

This court has identified eleven factors which, to varying degrees, influence resolution of the question of whether a transfer to a corporation by a shareholder is a sale (debt) or a contribution to capital (equity).[1]

---

**1.** In 1969, Congress authorized the Secretary of the Treasury to prescribe regulations setting forth the factors to be considered in determining whether an advance is debt or equity. 26 U.S.C. § 385 (1982). In the statute, Congress set forth five factors which the Secretary could, but was not required, to include in the regulations:

(1) whether there is a written unconditional promise to pay on demand or on a specified date a sum certain in money in return for an adequate consideration in money or monies worth, and to pay a fixed rate of interest,

(2) whether there is subordination to or preference over any indebtedness of the corporation,

(3) the ratio of debt to equity of the corporation,

(1) the names given to the certificates evidencing the indebtedness;

(2) the presence or absence of a maturity date;

(3) the source of the payments;

(4) the right to enforce payment of principal and interest;

(5) participation and management;

(6) a status equal to or inferior to that of regular corporate creditors;

(7) the intent of the parties;

(8) "thin" or adequate capitalization;

(9) identity of interest between creditor and stockholder;

(10) payment of interest only out of "dividend" money;

(11) the ability of the corporation to obtain loans from outside lending institutions.

*Bauer v. CIR,* 748 F.2d 1365, 1368 (9th Cir.1984); *A.R. Lantz Co. v. United States,* 424 F.2d 1330, 1333 (9th Cir.1970); *O.H. Kruse Grain & Milling v. CIR,* 279 F.2d 123, 125–26 (9th Cir.1960).[2] No one factor is decisive. *Bauer,* 748 F.2d at 1368. The court must examine the particular circumstances of each case. *Id.* "The object of the inquiry is not to count factors, but to evaluate them." *Id.* (quoting *Tyler v. Tomlinson,* 414 F.2d 844, 848 (5th Cir. 1969)).

In upholding the determination of the Commissioner, the district court cited only one of the eleven factors, the absence of a maturity date and other indicia of bona fide indebtedness. The court also emphasized the fact that this was not a traditional arms length transaction but one between related parties. Although a transaction between a stockholder and her corporation invites close scrutiny, *Gyro Eng'g,* 417 F.2d at 440, a transaction must not be disregarded simply because it was not at arms length,

(4) whether there is convertability into the stock of the corporation, and
(5) the relationship between holdings of stock in the corporation and holdings of the interest in question.

26 U.S.C. § 385(b) (1982). Thirteen years later, in 1982, the Secretary promulgated regulations. However, the Secretary withdrew those regulations on July 6, 1983, and now it appears likely that the Treasury Department will recommend repeal of § 385. *See* B. Bittker & J. Eustace ¶ 4.05 (1986 Cumm.Supp. No. 3).

*Sun Properties v. United States,* 220 F.2d 171, 174 (5th Cir.1955). It is true that "[t]he typical indicia of a debt are a sum certain payable over a specific period of time at a stipulated rate of interest." *Church of Scientology of California v. CIR,* 823 F.2d 1310, 1319 (9th Cir.1987); *see also* 26 U.S.C. § 385. However, there is "no general requirement that transactions be entered into in a conventional way for them to be recognized as having the usual tax result." *Sun Properties,* 220 F.2d at 174.

We review for clear error a district court's determination of whether a transaction between a shareholder and her company constitutes a sale or a contribution to capital. *Bauer,* 748 F.2d at 1367. When a lower court has overemphasized one of the eleven debt-equity factors, "this court has consistently been disposed to reverse." *A.R. Lantz Co.,* 424 F.2d at 1333. However, we will reverse only if, in considering all of the factors, we find that the court clearly erred. *Cf. Bauer,* 748 F.2d at 1368–71.

1. *Names Given to the Certificates Evidencing the Indebtedness.* The issuance of a stock certificate indicates an equity contribution and the issuance of a bond, debenture or note indicates a bona fide indebtedness. *Estate of Mixon,* 464 F.2d 394, 403 (5th Cir.1972). The document executed by Hardman, Inc. lacks a name, but it contains language typical of a promissory note: "[I]n consideration of ...," "Hardman, Inc. hereby agrees to pay...." The document contains no language typical of a stock certificate such as reference to dividend, voting or redemption rights. This factor weighs in favor of a finding that the transaction was a sale.

2. The cited cases involve cash advances made by shareholders to their companies, and address whether such advances are loans or capital contributions. The analysis, however, applies equally to the question whether the transaction between Mrs. Hardman and Hardman, Inc., was a sale or a contribution to capital, and whether the resulting payment to Mrs. Hardman was in satisfaction of an obligation arising from the sale or a dividend.

2. *The Presence or Absence of a Maturity Date.* The absence of a fixed maturity date indicates that repayment is tied to the fortunes of the business. *Id.* at 404. The contract contains no fixed maturity date. Furthermore, as the district court pointed out, repayment is not unconditional, nor is the amount of principal and interest stated in a sum certain. These are important factors and the district court concluded that they compelled a finding that the property transfer was a contribution to capital. Although we find merit in the court's finding, we note that the document contains more of the traditional indicia of a debt instrument than that of an equity instrument. Although there is no fixed maturity date, repayment is tied to a fairly certain event—sale of the property—and guarantees payment of an amount relative to the value of the property. An equity instrument, on the other hand, contains no guarantee of dividend payments in any amount at any time.

3. *The Source of Payments.* If repayment is not dependent upon earnings, the transaction more resembles a sale. *Id.* at 405. On its face, this factor seems to weigh in favor of a finding of equity because the payment came from corporate profits. However, the payment did not come from the general earnings and profits of the corporation but rather profits from the resale of this particular tract of land. The contract entitled Mrs. Hardman to receive one-third of the profits from resale even if the company suffered a loss in its overall operations. A distribution is a dividend only to the extent of the corporation's accumulated earnings and profits. 26 U.S.C. § 316 (1982). That this payment is tied to the sale of the property, and not the overall fortunes of the corporation, makes it logically distinct from a payment out of earnings and profits. Accordingly, this factor supports a finding that the transaction was in satisfaction of the obligation arising from the original sale rather than a dividend distribution.

4. *The Right to Enforce the Payment of Principal and Interest.* The presence of an enforceable obligation to pay a share of the profits on resale of the property supports a finding that the transfer was a sale. *Id.* Mrs. Hardman had an absolute right to enforce the terms of the contract. This feature distinguishes the contract from a stock instrument in which there is no right to enforce payment of dividends. The fact that payment was contingent upon the resale of the property does not make the contract unenforceable. *See* Restatement (Second) of Contracts §§ 224–226 (1981).

5. *Participation in Management.* If a stockholder's percentage interest in the corporation or voting rights increase as a result of the transfer, it will contribute to a finding that the transfer was a contribution to capital rather than a sale. Mrs. Hardman's percentage of ownership and control did not change as a result of the transfer.

6. *A Status Equal to or Inferior to that of Regular Corporate Creditors.* Equity participants take a subordinate position to creditors regarding right to payment upon liquidation. 15A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7481 (rev. perm. ed. 1981). There is no evidence that the parties subordinated Mrs. Hardman's position to those of non-stockholder creditors. Presumably she had an equal right to enforce payment, indicating that the transfer was a sale.

7. *The Intent of the Parties.* All of the objective evidence points to a conclusion that the parties intended the transaction to be a sale rather than a contribution to capital. The document executed by Hardman, Inc. contains language typical of a promissory note. The written argument and deposition submitted by the Hardmans and Hardman, Inc. indicate that the parties intended the transaction to be a sale. The government argues that the transaction "clearly was designed to improperly convert a subsequent dividend distribution into capital gain" but offers nothing to support this assertion. We note that the purpose of this entire inquiry is to decipher the true intent of the parties. All eleven factors contribute to this evaluation. However, the objective evidence of intent one-sidedly favors the interpretation given by the Hardmans.

8. *"Thin" or Adequate Capitalization.* Thin capitalization evidences a capital contribution. A high ratio of debt to equity tends to show that the obligation is unrealistic or beyond the corporation's ability to perform. *Gyro Eng'g*, 417 F.2d at 439. The district court found that the "[c]orporation did not appear to be 'thinly' capitalized but, rather, appeared to be an on-going, viable corporation with assets other than the property acquired from Mrs. Hardman." This finding supports a conclusion that the transfer was a sale.

9. *Identity of Interest Between Creditor and Stockholder.* If the property or funds advanced is in proportion to the stockholder's capital interest, it will lend to a finding that the transfer was a contribution to capital. *Bauer*, 748 F.2d at 1370. Here, only Mrs. Hardman transferred property to the corporation and the corporation distributed money only to her in connection with the sale of Hale Field. There was no correlation whatsoever between her percentage interest in the corporation and the amount of money distributed to her.

10. *Payment of Interest Only Out of "Dividend" Money.* This factor is essentially the same as the third factor, "the source of the payments." As we noted earlier, the payment related to profits from the sale of the land not overall earnings and profits. The company was obligated to pay regardless of whether it had accumulated earnings and profits. Therefore, the payment was not from "dividend" money.

11. *The Ability of the Corporation to Obtain Loans from Outside Lending Institutions.* If a corporation is able to borrow funds from outside sources, the transaction has the appearance of a bona fide indebtedness and indicates that the shareholder acted in the same manner toward the corporation as "ordinary reasonable creditors would have acted." *Estate of Mixon*, 464 F.2d at 410. If no reasonable creditor would have sold property to the corporation with payments to be made in the future, an inference arises that a reasonable shareholder would not do so either. *Id.* The district court found that Hardman, Inc. was an ongoing, viable corporation with assets other than the property acquired from Mrs. Hardman. Presumably Hardman, Inc. could easily obtain financing from other sources and the government makes no assertion to the contrary. This factor weighs in favor of a finding that the obligation accompanying the transfer of the property to Hardman, Inc. was a bona fide indebtedness.

## III.

Our analysis of this transaction in light of these eleven factors leads us to conclude that Mrs. Hardman's transfer of the Hale Field property to Hardman, Inc. was a sale rather than a contribution to capital. We recognize that the lack of formalities in the instrument executed by Hardman, Inc., raises the suspicion that the transaction was a disguised attempt to extract earnings and profits from the corporation at favorable capital gains tax rates. However, we find that the trial court erred in relying on this sole factor and neglecting to consider fully the several other factors, all of which point to the opposite conclusion. Accordingly, the decision of the district court is reversed and this case is remanded for a determination of the amount of excess taxes paid by the Hardmans and Hardman, Inc.

**REVERSED and REMANDED.**