JONNARD GREENBERG AND ADELYN J. GREENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
GREENBERG v. COMMISSIONER
Docket No. 12574-90
United States Tax Court
T.C. Memo 1992-292; 1992 Tax Ct. Memo LEXIS 318; 63 T.C.M. (CCH) 3042; May 19, 1992, Filed *318 Decision will be entered for respondent. Morton Noveck, Harold Noveck, and Robert David Gorman, for petitioners. Dennis G. Driscoll, for respondent. DAWSON, CANTREL
FRANCIS J. CANTREL
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Francis J. Cantrel pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: Respondent determined a deficiency of $ 10,076 in petitioners' Federal income tax for 1986. The issue for decision is whether petitioners are entitled to a nonbusiness bad debt deduction for 1986. Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in West Bloomfield, Michigan, at the time they filed their petition. They filed a joint 1986 Federal income tax return with the Internal Revenue *319 Service. On Schedule D attached to their tax return, petitioners claimed a nonbusiness bad debt loss of $ 50,379. Petitioners' claimed bad debt loss results from a transaction they entered into with Samuel and Daryl Leiter (the Leiters). Daryl Leiter is petitioner Adelyn J. Greenberg's sister, and Samuel Leiter is Daryl's husband. Jonnard Greenberg (hereinafter petitioner) was an astute businessman involved in the grocery industry for many years prior to 1986, and he enjoyed great success in his endeavors. In 1975, he formed Jonnard Greenberg and Associates, a building design company. His basis in the company's stock at the time of formation was $ 8,680. In 1986, he sold his stock interest for $ 3,250,000. Sometime prior to 1986, Samuel Leiter (Mr. Leiter) had been employed as a food broker in the Detroit, Michigan, area. In 1981, Mr. Leiter incorporated Leiters' Progressive Foods Company (LPFC), a food brokering business, and became its president. It is not clear whether Mr. Leiter's other employment as a food broker had terminated at the time he formed LPFC. Further, the commencement date of actual operations by LPFC is uncertain. LPFC's retained earnings as of May 31, *320 1983, were $ 1,713 and, as of May 31, 1984, were $ 11,352. Mr. Leiter's business as a food broker, immediately preceding the transaction at issue, was operated, in effect, as a middleman between grocers and warehousers. Since he wanted to expand his business to include new lines of food and to begin maintaining inventory, Mr. Leiter approached petitioner, his brother-in-law, with a proposal concerning the creation of a food stocking distributorship. A food stocker, as opposed to a broker, needed to maintain inventory and required such items as trucks and a warehouse in order to operate. After several meetings concerning the proposal, including profitability projections prepared by an accountant, petitioner and Mr. Leiter reached an oral agreement. Pursuant to the agreement, on January 28, 1985, petitioners and the Leiters cosigned a promissory note to Michigan National Bank-Oakland (the Bank) for a $ 55,000 loan. The loan was secured by the Leiters' residence. The proceeds of the loan were transferred to Premier Foods, a division of LPFC, created as a food stocking distributorship. Premier Foods operated profitably for its first 3 months so that it made some payments on the *321 loan. However, stiff competition and spoilage of some products forced the business to cease operations on or about the 6th or 7th month of operation in 1985. LPFC did not file any Michigan Annual Reports after May 1985. In 1988, LPFC was dissolved by the State of Michigan for failure to file Michigan Annual Reports. The United States Bankruptcy Court for the Eastern District of Michigan has no record of a bankruptcy filing by LPFC. On September 27, 1985, the Leiters filed a Chapter 7 bankruptcy petition. The notice of discharge was issued on February 7, 1986. The order closing the estate was issued on February 26, 1986. The Leiters did not list any debt owed to petitioners in their bankruptcy proceeding. Petitioners did not file a claim in the bankruptcy proceeding. At some point, which date is not in evidence, the Leiters' residence was taken back by the mortgage company. Petitioners made payments on the loan totaling $ 48,952.14. They completely paid off the loan on or about January 27, 1986. Mr. Leiter wrote letters to petitioners, dated August 5, 1986, and September 1, 1986, informing them that he had obtained stable employment and intended to begin making monthly *322 payments on a $ 75,000 debt which he owed to them. Mr. Leiter made no monthly payments. Respondent denied in full petitioners' claimed bad debt loss deduction for 1986. Respondent asserts that petitioners failed to establish the existence of a bona fide debtor-creditor relationship between petitioners and either the Leiters or Premier Foods. Alternatively, respondent argues that, if a debt is assumed to exist, petitioners have failed to demonstrate that it became wholly worthless in 1986. In addition, respondent concedes that because the issue concerning the existence of a bona fide debtor-creditor relationship was not raised in the notice of deficiency, it constitutes new matter, and she bears the burden of proof on that issue pursuant to Rule 142(a). Petitioners claim that they are entitled to the claimed nonbusiness bad debt loss deduction because a valid debtor-creditor relationship existed between petitioners and LPFC and because the obligation from LPFC to petitioners became worthless during 1986. Respondent's determination, as contained in her notice of deficiency, is presumed to be correct. Deductions are strictly a matter of legislative grace, and petitioners bear *323 the burden of proving their entitlement to any deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111 (1933). However, since respondent first alleged that petitioners were not involved in a valid debtor-creditor relationship subsequent to her issuance of the notice of deficiency, respondent bears the burden of proof on this new matter. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 889-890 (1981). Thus, we will first decide whether a valid debtor-creditor relationship existed. As a general rule, section 166 allows a deduction for any bad debt which becomes worthless during the taxable year. However, section 166 distinguishes business bad debts from nonbusiness bad debts. Sec. 166(d); sec. 1.166-5(b), Income Tax Regs. Nonbusiness bad debts may be deducted in the same manner as short-term capital losses only if they are entirely worthless in the year claimed. Sec. 166(d). In order for the bad debt loss claimed by petitioners to be deductible, the unrepaid advances must be shown to be bona fide loans and not gifts or capital contributions. *324 Sec. 1.166-1(c), Income Tax Regs.
In determining whether advances constitute loans or capital contributions, we generally focus upon the substance, or economic reality, of a transaction and not its form. Hardman v. United States, 827 F.2d 1409, 1411 (9th Cir. 1987); Schnitzer v. Commissioner, 13 T.C. 43, 60-61 (1949), affd. per curiam 183 F.2d 70 (9th Cir. 1950). Several factors for determining whether an advance represents debt or equity have been identified and considered. Segel v. Commissioner, 89 T.C. 816, 827-828 (1987). Among the factors to be considered are: (1) The presence of a written agreement; (2) the intent of the parties; and (3) the likelihood of obtaining similar loans from disinterested investors. Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980). The factors are not equally significant and no one factor is determinative. Id. Ultimately, we must decide whether there was "a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship". *325 Litton Business Systems, Inc. v. Commissioner, 61 T.C. 367, 377 (1973). Because of the intrafamily nature and the absence of any written documentation of the transaction at issue, it is subject to a close and special scrutiny. Andrew v. Commissioner, 54 T.C. 239, 245 (1970); Rude v. Commissioner, 48 T.C. 165, 172 (1967). In our view, no valid debtor-creditor relationship ever existed between petitioners and LPFC. We are persuaded that petitioners did not extend bona fide loans with a reasonable expectation of repayment, as indicated by several facts including, but not limited to, the following: (1) The proceeds were advanced at the inception of Premier Foods' operations; (2) petitioners failed to have the Leiters execute any promissory notes with respect to the alleged loan; (3) petitioners received no security or collateral provisions in their favor indicating their status as a creditor; and (4) petitioner testified that he received a 20-percent interest in the business as a result of his assistance in financing the business. In support of their claim that a bona fide debtor-creditor relationship existed between petitioners *326 and LPFC, petitioners allege that: (1) Petitioners had no voting power in the debtor; (2) the rate of interest was fixed by the Bank note; (3) there was no contingency for repayment other than the ability of the debtor to make payments; and (4) the maturity date was fixed by the Bank note. Each of the factors asserted by petitioners is unsupported by any evidence other than petitioner's testimony. In contrast, the facts supporting respondent's claim are not disputed. We are not bound to accept petitioner's self-serving statements as gospel, and we choose not to do so here. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Simply stated, petitioner's own testimony and the surrounding facts indicate that the advances were made by petitioners to LPFC for investment purposes. Accordingly, we conclude that respondent has met her burden of proving that a valid debtor-creditor relationship did not exist between petitioners and LPFC. Even if we were to assume, for the sake of argument, that a valid debtor-creditor relationship did exist between petitioners and LPFC, petitioners would not prevail because they have failed to establish that the debt became wholly *327 worthless during 1986. Whether and when a debt becomes worthless is a question of fact,in which all relevant evidence is considered, including the full value of collateral, if any, and the financial condition of the debtor. Sec. 1.166-2(a), Income Tax Regs. Further, the taxpayer must show that he intended to enforce collection of the debt, but that some event occurred during the year in which the deduction is sought that rendered the debt uncollectible. Davis v. Commissioner, 88 T.C. 122, 142-144 (1987), affd. 866 F.2d 852 (6th Cir. 1989). The taxpayer need not necessarily resort to legal action; however, he must show that the debt became wholly worthless in the year the deduction is claimed. Levin v. United States, 220 Ct. Cl. 197, 597 F.2d 760, 767 (1979); sec. 1.166-2(b), Income Tax Regs.
Petitioners argue that they incurred a nonbusiness bad debt loss in 1986 when they paid off the loan to the Bank. In conjunction with this argument petitioners note that: (1) LPFC did not file a Michigan Annual Report after May 1985; (2) the business was defunct by the beginning of 1986; and (3) the corporation was *328 dissolved by the State of Michigan in 1988, which indicates that reports were not filed for 3 years and that the corporation was inactive during that period. Petitioners' argument fails to appreciate the requirement that they must prove that the loan at issue became wholly worthless during 1986, if they are to be entitled to the deduction at issue. We find petitioners' argument persuasive in that it demonstrates that the loan at issue may have become wholly worthless during 1985. The fact that petitioners paid off the Bank loan during 1986 does not establish that the loan at issue became wholly worthless during 1986. Petitioners also have not disproved the possibility that the loan at issue had not yet become wholly worthless by the end of 1986. While petitioner testified that LPFC had gone "ka-flooey" sometime during 1985, no other proof of the specific cause or time of LPFC's financial demise was presented. The facts, however, indicate that LPFC was not dissolved until 1988. In addition, petitioners have not shown that they made any bona fide effort to collect the loan from LPFC before they paid off the Bank loan. Moreover, on two occasions in the latter part of 1986, *329 Mr. Leiter advised petitioners that he intended to begin making payments on the debt owed to them. Thus, petitioners have not shown when the loan at issue became wholly worthless. Based on the record as a whole, we sustain respondent's determination that petitioners are not entitled to a nonbusiness bad debt loss for 1986. To reflect the foregoing, Decision will be entered for respondent.