Arvilla SCOGGIN
*v.*
DEPARTMENT OF REVENUE
(TC 3679)

Richard L. Larson, Eugene, represented plaintiff.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered March 9, 1995.

**CARL N. BYERS, Judge.**

This matter is before the court on defendant's Motion for Summary Judgment and plaintiff's cross motion for summary judgment. The facts, most of which are derived from documents and correspondence, are not disputed.

About 1960 plaintiff and her husband acquired 145 acres in Lane County. They initially grew Christmas trees on the property but their desire was to someday develop it for residential use. Although plaintiff and her husband divorced in 1979, they continued with their objective of developing the property. Their son Craig appears to have done most of the investigatory work. In the late 1970's property values were rapidly appreciating and prospects for development looked good.

In 1981, plaintiff and her family organized Skyridge Development, Inc., (Skyridge) an Oregon corporation, to develop the property. Plaintiff and her ex-husband wanted their children to benefit and therefore organized the corporation as follows:

| Officers and | Shareholders | Percent of Stock | Capital Contribution |
|---|---|---|---|
| President | Craig Scoggin (son) | 30% | $15,000 |
| Vice-President | C. L. Scoggin (ex-husband) | 30 | 15,000 |
| Secretary | A. R. Scoggin (plaintiff) | 30 | 15,000 |
| | Lorie Thornton (daughter) | 5 | 2,500 |
| | Rick Scoggin (son) | 5 | 2,500 |
| | | 100% | $50,000 |

Plaintiff and her ex-husband sold the land to Skyridge on January 13, 1981, for $420,000. The terms of the sale were $50,000 down payment, with the balance of $370,000 payable in annual installments of $37,000, plus interest at 10 percent per annum. The sale contract acknowledges the purchaser's intent to develop the property. The sellers agreed to sign documents for approval of division of the property. The purchaser agreed to comply with all government rules and regulations regarding development, and to hold the sellers harmless with regard to the division of the property. In contemplation of development, the contract provided for lot releases at the rate of $15,000 per lot.

As is common, the sellers executed a warranty deed which was to be placed in escrow. Upon payment of the contract in full, the escrow company was to deliver the warranty deed to the purchaser. In the event of a default, the seller could demand return of the warranty deed and seek the remedies provided under the contract.

The contract was not recorded. Instead, the warranty deed apparently was delivered to Skyridge because it was recorded on February 12, 1981, in Reel No. 1120R, Lane County Official Records.

The plan was to develop the property into a planned unit development containing 28 residential lots of approximately one acre, and over 100 acres of common area. To obtain the funds for development of the property, Skyridge negotiated a loan of $130,000 from the Wiper Group, which consisted of three members of the same family. At that time, Skyridge anticipated transferring five lots to contractors as payment for development services and materials. Skyridge also gave the Wiper Group options to purchase four lots at $32,000 per lot. Skyridge anticipated transferring the four lots to the Wiper Group in payment of the loan.

The development experienced adverse economic conditions and a series of other obstacles. Between 1981 and 1986, plaintiff advanced an additional $41,156 to Skyridge. Because of obstacles and delays, the Wiper Group instituted foreclosure proceedings against the property in 1986. In response, Skyridge filed a voluntary petition for relief under Chapter 11 of the bankruptcy code. Skyridge was still optimistic that development could be successfully completed. Plaintiff advanced another $20,000 to the bankruptcy estate to make it possible to complete the development.

By late 1989 the situation was desperate. Skyridge's last hope was a written offer by a third party to purchase the essentially completed development for $500,000. The offer was accepted, but the trustee in bankruptcy had to obtain the consent of all the secured creditors. In his letter to plaintiff's attorney, the bankruptcy

trustee set forth the claims against the bankrupt estate. Briefly, the claims were:

| Creditor's Name | Amount Owing |
|---|---|
| Barclay's American FKA Citicorp | $ 22,000 |
| The Wiper Group | 279,000 |
| United Pipe & Supply Co., Inc. | 17,000 |
| Wagnon | 3,684 |
| Chickering & Green, Inc. | 4,157 |
| Callis | 33,000 |
| Real Estate Commission | 30,000 |
| Bankruptcy Estate | 50,000 |
| Scoggin's Lien | 370,000 |

By this time the Chapter 11 bankruptcy had been converted to a Chapter 7 bankruptcy. The bankruptcy court granted Skyridge a limited time to sell the property, after which the court would release the property for foreclosure by the Wiper Group. At the last minute, the proposed purchaser withdrew its offer and Skyridge was unable to sell the property. In 1991, the Wiper Group foreclosed its mortgage and the sole asset of Skyridge was lost.

In her 1989 personal income tax return, plaintiff did not deduct the $20,000 she had advanced the bankruptcy estate nor did she deduct the amount owing on the contract. She acknowledged that in 1989 there was still the possibility of some recovery on either of those debts. However, plaintiff did conclude that her stock in Skyridge was totally worthless and therefore deducted as a loss the basis in her stock, calculated as $15,000 plus $41,156 in advances. Defendant disallowed the deduction on the grounds that the stock did not become worthless until 1991, the year that Skyridge lost the property through foreclosure.

The issue before the court is whether the transfer of the property from plaintiff and her ex-husband to Skyridge was a sale or a contribution to capital.

This issue is significant because its resolution determines whether plaintiff's stock became worthless during the year in question. If plaintiff's transfer of the property to Skyridge is treated as a sale, creating a valid debt on the part of the corporation to plaintiff and her

ex-husband, then the liabilities of the corporation clearly exceeded the value of its assets. In that case, plaintiff was entitled to declare her shares in Skyridge totally worthless and deduct the loss on her 1989 return. However, if the transfer of the property to the corporation was a contribution to capital, the corporate debt was reduced by $370,000. If that is the case, the expected $500,000 sale price would have resulted in the shareholders recovering some of their capital.

Defendant contends that the transfer was a capital contribution for the following reasons: the sale was not arm's length; no installment payments were ever made; the debt was subordinated to corporate creditors; and, the corporation was thinly capitalized. Defendant also points out that the contract was never recorded and there was not a valid lien. In support of its position, defendant cites *Leuthold v. C.I.R.*, TC Memo 1987-610, 54 TCM (CCH) 1308, TCM (P-H) 87,610 (U.S. Tax Ct., Dec. 15, 1987).

Plaintiff also cites *Leuthold*, but claims it supports her position. Plaintiff contends she satisfies the eleven factors set forth in that case. Without enumerating all eleven points, plaintiff argues that: (1) she observed the form and substance of a sale; (2) she did not participate in the activities of the corporation; (3) the need to subordinate the debt showed that the debt still existed; (4) plaintiff's status as a corporate creditor was on equal footing with other corporate creditors; (5) although the corporation may not have had substantial assets, the property had value; (6) the corporation had the ability to borrow from outside sources, and (7) plaintiff and her ex-husband owned the property, but there were three other shareholders in the corporation. 54 TCM (CCH) at 1312. Plaintiff contends she never intended to make a gift to the other shareholders by virtue of making a contribution to the corporation.

The facts disclose an unfortunate series of frustrations and failure. Despite the loss and suffering incurred by plaintiff, for the reasons set forth below, the court finds that the transfer of property to Skyridge was a contribution to capital.

■       Although the transaction was initially conceived in the form of a sale, plaintiff and her ex-husband never followed the form. The real estate contract and the warranty deed to the property were both executed on January 13, 1981. However, contrary to usual practices, the contract was not recorded and the deed was released or delivered to Skyridge before the contract was satisfied. As a result, Skyridge had outright title to the property even though plaintiff still claimed a lien for the debt.

The court considers it significant that although plaintiff's claim of a debt owing was shown on Skyridge's original bankruptcy petition, by the time the second amended plan of reorganization was filed, plaintiff was no longer shown as a creditor. The second amended disclosure statement indicates:

> "Clarification of the assets and liabilities of Debtor has occurred since the filing of the Chapter 11 proceeding * * * [s]ubsequent to the filing some of these claims have been determined or have been clarified, and this document and the exhibits hereto are accurate in their representations of various assets and liabilities."

Plaintiff contends that the fact that she had to subordinate her lien to the loan of the Wiper Group is evidence of the validity of that lien. With the contract unrecorded and the warranty deed transferring title to Skyridge being recorded, the subordination agreement appears to be merely a precautionary move.

■■       The corporation was thinly capitalized and had to borrow to make the extensive improvements required to make the property into an income or cash-generating asset. Although thin capitalization does not, by itself, control the character of a transaction it is evidence to be considered. *Gyro Eng. Corp. v. United States*, 417 F2d 437, 439 (9th Cir 1969). Plaintiff was required to subordinate her lien in order for the corporation to operate. The corporation had no other source of cash flow and had to develop the property to pay for it. In other words, payment was dependent upon the success of the business. When the business did not succeed, no payments were made on the contract. This circumstance tends to indicate that the transfer was a contribution to capital.

The factual situation in this case may be contrasted with cases where the courts have found a sale and not a contribution to capital. For example, in *Bradshaw v. United States*, 683 F2d 365 (1982), the court noted that the formalities of a sale had been strictly observed, *id.* at 373, the property had continued to increase in value, *id.* at 368, and the corporation could have borrowed money to pay off the property, *id.* at 375. Also, the shareholder's notes were not subordinated to general corporate creditors and contained a means for collection at maturity. *Id.* at 373. Finally, the corporation had other resources, and the property did not require extensive improvements in order to make it a cash producing asset. *Id.* at 374.

The court finds that the economic realities surrounding the Skyridge development are contrary to plaintiff's position. Plaintiff could not expect payment on the sale contract unless the corporation had earnings. Further, plaintiff had to subordinate her claim to the claims of other general creditors in order for the corporation to proceed. As one author has noted:

> "The last two factors are particularly important. It becomes difficult to distinguish the 'debt' from stock if payment is dependent on the corporation's future success or if payments can be made on the 'debt' only after satisfaction of 'outside' creditor's claims." Ellis, *Tax Problems in Sales to Controlled Corporations*, 21 Vanderbilt Law Rev 196, 219 (1968).

■ Finding that the transfer of the property to Skyridge was a contribution to capital resolves the issue against plaintiff. Plaintiff admits that as of 1989 she had a reasonable expectation of some recovery under the sale contract. Treating the transfer as a contribution to capital results in the corporation having some potential equity, thereby preventing plaintiff's stock in Skyridge from being totally worthless. Accordingly, the court finds that department's Opinion and Order No. 93-1198 must be sustained. Now, therefore,

IT IS ORDERED that defendant's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that plaintiff's cross motion for summary judgment is denied. Costs to neither party.