**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 12 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| J. MICHAEL BELL; SANDRA L. BELL, | No. 16-70165 |
| Petitioners-Appellants, | Tax Ct. No. 11917-12 |
| v. | |
| COMMISSIONER OF INTERNAL REVENUE, | MEMORANDUM[*] |
| Respondent-Appellee. | |

| | |
|---|---|
| MBA REAL ESTATE, INC., | No. 16-70166 |
| Petitioner-Appellant, | Tax Ct. No. 11918-12 |
| v. | |
| COMMISSIONER OF INTERNAL REVENUE, | |
| Respondent-Appellee. | |

Appeal from Decisions of the
United States Tax Court

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted July 10, 2017[]
San Francisco, California

Before:  GRABER and FRIEDLAND, Circuit Judges, and GUILFORD,[***] District Judge.

Petitioners J. Michael Bell, Sandra Bell, and MBA Real Estate, Inc. ("MBA"), appeal the tax court's decisions assessing deficiencies in income tax due for taxable years 2008, 2009, and 2010.  We affirm.

In 2008, newly formed MBA purchased all assets—primarily real-estate owned ("REO") contracts—from Mr. Bell's sole proprietorship for $225,000, to be paid in monthly installments of $10,000, at 10% interest.  The tax court held that the tax treatment of that transaction was governed by 26 U.S.C. § 351(a), which applies when "property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation."  Petitioners assert that the court erred because the Bells received a contractual right to $225,000, not "stock."  Petitioners therefore urge us to hold that the transaction is governed by § 351(b), which applies when a person receives "other property or money."

---

[**] The panel unanimously concludes that this case is suitable for decision without oral argument.  Fed. R. App. P. 34(a)(2).

[***] The Honorable Andrew J. Guilford, United States District Judge for the Central District of California, sitting by designation.

Title 26 U.S.C. § 385 defines the "[t]reatment of certain interests in corporations as stock or indebtedness."  Although a corporation may characterize a transaction as creating indebtedness, that characterization is not binding on the Secretary.  Id. § 385(c)(1).  Applying relevant factors—to be promulgated via regulation—the Secretary of the Treasury must determine "whether an interest in a corporation is to be treated for purposes of this title as stock or indebtedness (or as in part stock and in part indebtedness)."  Id. § 385(a).  In other words, § 385 dictates whether Petitioners' interest in the corporation—the contractual right to collect $225,000—is "stock" for purposes of title 26.

In Hardman v. United States, 827 F.2d 1409, 1411 n.1 (9th Cir. 1987), we noted that the Secretary had yet to promulgate a regulation listing the applicable factors.  We therefore announced our own 11-factor test, synthesized from earlier court decisions.  Id. at 1411–12.  We agree with the parties that those factors determine the proper characterization of the transaction at issue here.[1]

Having carefully considered the 11 factors, we hold that the tax court did not clearly err in concluding that the contractual right to $225,000 was properly

---

[1] The Secretary recently promulgated a regulation on point, but the regulation does not apply here:  "This section applies to taxable years ending on or after January 19, 2017."  26 C.F.R. § 1.385-1(f).  In any event, the new regulation does not change the analysis because, going forward, the proper treatment of a transaction "is determined based on common law, including the factors prescribed under such common law."  Id. § 1.385-1(b).

viewed as "stock" and not "indebtedness." The transaction had many formal indicia of a true sale, thus supporting a finding of indebtedness. But "[s]ubstance, not form, controls the characterization of a taxable transaction," Hardman, 827 F.2d at 1411, and many factors support the tax court's determination that the right to $225,000 was properly viewed as "stock." MBA had no meaningful assets apart from the REO contracts and no history of doing business. There was no security; there was no promissory note; MBA had very little capital; MBA had no history of repayment; and MBA's sole non-trivial assets—the REO contracts—were speculative. As the tax court correctly found, "[t]here is no evidence in the record as to whether MBA would have been able to obtain a loan from a third party. MBA was a newly organized, thinly capitalized business."

The transaction at issue here differs in several important ways from the transaction we addressed in Gyro Engineering Corp. v. United States, 417 F.2d 437 (9th Cir. 1969). First, in Gyro, the corporation issued "a series of negotiable promissory notes," id. at 438, whereas here no such notes were issued. Second, the purchased apartments in Gyro had a history of producing income, and that income was sufficient to make all the necessary payments under the notes. Id. at 439. Here, there was no meaningful history of payments under the REO contracts and the contracts were speculative in nature. Third, unlike the REO contracts at issue

4

here, the apartment buildings in <u>Gyro</u> had "self liquidating potential." <u>Id.</u> Fourth, unlike the unknown and speculative cash value of the REO contracts, the parties in <u>Gyro</u> had experts testify as to the "present cash value" of the apartment buildings, and that value was approximately the same as the transaction amount. <u>Id.</u> at 440 n.5. Finally, unlike the lack of evidence in this record suggesting that a lender would enter into a comparable agreement, the government's expert in <u>Gyro</u> "acknowledged that 'the hypothetical average investor' would have entered into the agreement." <u>Id.</u> at 439–40.

For those reasons, we hold that, under 26 U.S.C. § 385, the tax court properly treated the contractual right to $225,000 as "stock" for purposes of title 26. Because the Bells received only "stock," § 351(a), and not § 351(b), governs the tax treatment of the transaction.[2]

**AFFIRMED.**

---

[2] In urging us to hold that § 351(b) does not apply, the government advances an outdated—and erroneous—argument that the contractual right is a "security" and therefore not part of the "boot." <u>See</u> Gov't's Brief at 40–42 (citing cases from 1933, 1940, 1954, 1958, and 1978). The pre-1989 version of § 351 distinguished between "stock <u>or securities</u>" on the one hand and "other property or money" on the other hand. <u>E.g.</u>, 26 U.S.C. § 351 (1988) (emphasis added). But in 1989, Congress removed the "or securities" clause from § 351 in a section of the Public Law titled "Securities Treated as Boot Under Section 351." Pub. L. No. 101-239, § 7203, 103 Stat. 2106, 2333 (1989). The government's stale argument does not affect our analysis because, under § 385, the contractual right to payment is properly viewed as "stock."