CURTIS and VIVIAN BAIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bain v. Commissioner
Docket No. 41573-86.
United States Tax Court
T.C. Memo 1989-310; 1989 Tax Ct. Memo LEXIS 297; 57 T.C.M. (CCH) 800; T.C.M. (RIA) 89310; June 26, 1989. Barry Lieberman, for the petitioners. Paul K. Voelker, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By statutory notice of deficiency dated July 23, 1986, respondent determined deficiencies in petitioners' Federal income tax for taxable years 1981 and 1982 in the amounts of $ 5,302.20 and $ 12,421.40, respectively. Respondent also determined additions to tax in the following amounts: Year
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6654
Sec. 6661
1981
$ 265.11
50% of the interest
due on $ 5,302.20
$   418.69
-0-
1982
621.07
50% of the interest
due on $ 12,421.40
1,202.44
[2] $ 2,418.25
*299 After concessions, [3] the remaining issues for our consideration are: (1) whether sums which petitioners received from the NBT Trust Account in 1981 and 1982 are taxable income to them; (2) whether petitioners incurred expenses in the amounts of $ 73,471.58 and $ 87,862.80 in 1981 and 1982, respectively, which are properly deductible under section 165; (3) whether petitioners are liable for an addition to tax pursuant to section 6654 for taxable years 1981 and 1982; and (4) whether petitioners are liable for an addition to tax pursuant to section 6661 for taxable year 1982. [4]
*300 FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioners Curtis and Vivian Bain, husband and wife, resided in Las Vegas, Nevada, at the time of filing the petition herein. [5] Petitioners timely filed joint Federal income tax returns for the years in issue. Petitioner Curtis Bain (petitioner) was employed as a rough carpenter with the Teamsters Union at the time of trial. Between 1959 and 1972, petitioner had been employed as a backup singer for Lawrence Welk and Roberta Lynn, a carpenter, a manager and instructor at a health studio and a teller at the Bank of Nevada. In 1972, petitioner purchased the stock of the Bank of Southern Nevada (the Bank) for $ 7,500. Although the Bank was inactive when purchased, it held a valid charter for operation and petitioner planned to revitalize and reopen the Bank. Sales of chartered banks were rare in Nevada at the time *301 when petitioner purchased the Bank. In order to finance the reorganization of the Bank, petitioner borrowed [6] $ 200,000 from Arvey Drown. However, Arvey Drown only gave petitioner $ 160,000, in numerous payments made between May 14, 1981 and June 30, 1982, and petitioner never received the remaining $ 40,000. Petitioner deposited the money into a checking account he opened under the name of the NBT Trust Account. The NBT Trust Account was created to hold the operating funds to be disbursed as needed for preorganization expenses. The signatories on the NBT Trust Account were Jack J. Purcel (Purcel), petitioner's attorney, and Gary Brewster (Brewster), a director of the Bank. Both Brewster and Purcel issued checks on the NBT Trust Account only at petitioner's direction. In the effort to reorganize the Bank, petitioner opened another checking account called "Bank and Trust Company of America in Organization" at the Mineral Bank. *302 The terms of the loan from Arvey Drown, in the form of a promissory note executed on May 8, 1981 (the note or the promissory note), imposed an interest rate of 20 percent, or the highest lawful rate. The loan was repayable solely from the Bank's reimbursements to petitioner for preopening organizational expenses which he would have paid with money drawn from the NBT Trust Account. Within 30 days of his receipt of reimbursement payments for preopening costs he had paid, petitioner was to remit the payment to Arvey Drown, but only after obtaining the approval of the Board of Directors of the Bank, the State Superintendent of Banks for the State of Nevada and the Federal Deposit and Insurance Corporation (FDIC). Payment was due in full no later than December 31, 1984. Petitioner provided no collateral for the loan. At the time of trial in June of 1987, petitioner had not paid any interest and had not repaid the loan. Arvey Drown had taken no action to compel petitioner to pay. In 1981 and 1982, petitioner occupied himself with the effort to revitalize and organize the Bank. Petitioner characterized his occupation on his income tax return as providing consulting services, and *303 he did perform such services for the venture to organize the Bank. Petitioner Vivian Bain performed secretarial and bookkeeping services. Petitioner was assisted in his endeavor by several persons experienced with finance and banking and who assumed positions on the Board of Directors. Although petitioner was not a director of the Bank, he planned to be Bank Manager when the Bank was open. Petitioners received checks drawn on the NBT Trust Account totalling the aggregate amounts of $ 14,200 and $ 23,491.17 in 1981 and 1982, respectively. Petitioner Vivian Bain received one check for $ 1,000 for bookkeeping services rendered, and the remainder of the checks were issued to petitioner. If the reason for the payment was marked on the check at all, it was marked as consulting services rendered by petitioner. The payments that petitioners received were spent on both business and personal use, but no records were introduced to show how the payments were allocated. On January 20, 1982, petitioner received a check in the amount of $ 14,235 drawn on the NBT Trust Account. Petitioner negotiated the check and used the proceeds to purchase a used 1980 Cadillac Seville automobile which *304 he registered in his name. On July 29, 1982, petitioner sold the Cadillac Seville for $ 13,500 and retained the proceeds. Although petitioner had high hopes for the success of the Bank, he was unable to open the Bank for business. FDIC approval was denied because Arvey Drown, who had provided the money for the organization of the Bank, was then under investigation by the Federal Bureau of Investigation (FBI). Without FDIC approval the Bank was inoperable for all practical purposes and the effort to reopen it was abandoned. Petitioner did not report any income from the NBT Trust Account for taxable year 1981 and, for taxable year 1982, reported gross income from consulting services in the amount of $ 3,000 on his Schedule C. OPINION The first issue for our consideration is whether petitioners received taxable income from the payments made by Arvey Drown in taxable years 1981 and 1982. Section 61(a) includes in gross income all income from whatever source derived. However, the proceeds of a loan are not included in gross income. *305 Consolidated-Hammer Dry Plate & Film Co. v. Commissioner,317 F.2d 829, 832 (7th Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; Falkoff v. Commissioner,62 T.C. 200, 206 (1974). Petitioners argue that Arvey Drown loaned the money to petitioner to enable him to reorganize and reopen the Bank for business but intended for petitioner to repay the loan when the business flourished. Similarly, petitioner maintains that he always intended to repay Arvey Drown. To buttress his argument petitioner relies heavily on the existence of the promissory note, whose terms include a payment date, a fixed interest rate and an apparently unconditional obligation to repay. Petitioners bear the burden of proving that the payments constituted a loan. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). A loan has been defined as "an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along with a fixed percentage in interest payable regardless of the debtor's income or the lack thereof." *306 Gilbert v. Commissioner,248 F.2d 399, 402 (2d Cir. 1957). In determining whether a transaction created a true debtor-creditor relationship, we are not bound by the parties' characterization of the transaction but rather we look to the underlying economic substance. Hardman v. United States,827 F.2d 1409 (9th Cir. 1987); Estate of Franklin v. Commissioner,544 F.2d 1045 (9th Cir. 1976), affg. 64 T.C. 752 (1975); United States v. Henderson,375 F.2d 36 (5th Cir. 1967). Among the factors which have often been applied are: (1) whether there is a fixed date for repayment; (2) whether there is a reasonable expectation of repayment; (3) whether there are notes or other evidences of indebtedness; (4) whether interest is required; and (5) whether the creditor makes a demand for payment once the debtor is in default. Zimmerman v. United States,318 F.2d 611, 613 (9th Cir. 1963). Although courts have traditionally considered a number of factors in determining the existence of a loan, the dispositive question is whether, at the time the parties entered into the transaction, the recipient *307 of the funds intended to repay the full amount of the advance and whether the person advancing the funds intended to enforce repayment. Beaver v. Commissioner,55 T.C. 85, 91 (1970); Fisher v. Commissioner,54 T.C. 905, 909-910 (1970). See also Haag v. Commissioner,88 T.C. 604, 615-616 (1987). Whether the payments from Arvey Drown to petitioners constituted a loan or taxable income is to be determined after a consideration of all the surrounding facts and circumstances. John Kelley Co. v. Commissioner,326 U.S. 521 (1946); Haber v. Commissioner,52 T.C. 255 (1969), affd. 422 F.2d 198 (5th Cir. 1970). Although petitioner and Arvey Drown executed a promissory note, we conclude that the note does not reflect the underlying substance of the transaction. The use of formal notes or debentures is not, by itself, dispositive. A.R. Lantz Co. v. United States,424 F.2d 1330 (9th Cir. 1970). The record indicates that Arvey Drown wanted to perform certain banking functions at the Bank but that, his direct involvement with and control over the Bank was impossible. We conclude *308 that Arvey Drown gave petitioner the money for the purpose of funding the organization of the Bank. Although the terms of the promissory note appear to manifest a debt, the record indicates that Arvey Drown was more of an investor than a creditor. The note terms indicate that repayment was to come from the Bank's reimbursement of preopening expenses to petitioner which could only come from the operating profits of the Bank itself. Repayment was further restricted and made expressly conditional upon the combined approval of the Bank's Board of Directors, the State Superintendent of Banks for the State of Nevada and the FDIC. Thus, repayment was conditional upon the Bank's success and restricted to bank profits. This arrangement is more reminiscent of investment than debt. Furthermore, interest was never paid and never demanded. When petitioner defaulted on the purported debt, Arvey Drown took no action to enforce repayment. Undertaking the risk of the business is a sign of an investor and not a creditor. Petitioner was not supposed to make the payments from his own resources but was to serve as a conduit channeling the profits of the Bank. Petitioner's lack of expertise managing *309 banks would prevent an ordinary arm's-length creditor from loaning him $ 160,000 without some security or assurance of repayment. Without collateral, Arvey Drown's repayment was limited to petitioner's own other income which was not substantial. There was no reason to believe that petitioner would have been able to repay a loan of $ 160,000 personally, and, indeed, subsequent events have borne this out. Furthermore, petitioner never paid any interest, an oversight which would have prompted most creditors to demand interest payments. Finally, although the terms of the promissory note do indicate that in the event of petitioner's failure to reorganize and open the Bank, the full payment would be due from petitioner in December of 1984, the record establishes that no demands for payment had in fact been made by the time of trial in June of 1987. Thus, the record establishes that, in reality, repayment was far from unconditional. We cannot hold that Arvey Drown intended or hoped that petitioner would repay $ 160,000 from any source other than the operating profits of the Bank. We are not required to believe a taxpayer's self-serving statements and we decline to do so in this case. *310 Geiger v. Commissioner,440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Although petitioner introduced two witnesses who testified that the arrangement between petitioner and Arvey Drown was a loan, they themselves had no firsthand knowledge and were merely repeating what petitioner had told them. Petitioner's version of the transaction is not supported by the record, and we can only surmise that the real purpose of the transaction was to allow Arvey Drown to invest in a Bank. The record indicates that, although the FBI investigation precluded direct involvement in Bank ownership, Arvey Drown wanted to control a bank allowing him to accomplish more easily certain financial transactions. We conclude that the promissory note was intended to obscure Arvey Drown's involvement in the Bank rather than to evidence a genuine debt. The terms of the promissory note show that Arvey Drown was more of an investor, with an interest in the ultimate success of the Bank, than a creditor. If the Bank could not be successfully opened for business then Arvey Drown would not be repaid, as in fact has occurred. Petitioner was never more than an agent. Thus, *311 we conclude that Arvey Drown's advances to petitioner did not constitute payment of loan proceeds, but was an investment in the Bank venture. Petitioner testified at trial that he withdrew sums of money from the NBT Trust Account, ultimately withdrawing all of it, to spend partly on the Bank's preopening business costs and partly on his own personal expenses. He kept no books or records and gives this Court no basis for allocating the withdrawn sums between business and personal use, although the record does establish that petitioner spent $ 14,235 on a Cadillac Seville automobile for his personal use. Because petitioner has wholly failed to establish which portion of the payments was used by him to attempt to reorganize the Bank we conclude that it is all taxable income to him. The second issue for our consideration is whether petitioner is entitled to deductions for the unreimbursed organizational expenses he paid in his efforts to reopen the Bank. The expenses incurred in the fruitless attempt to organize and operate a business venture may be deducted in the year in which the venture fails. Sec. 165; *312 Seed v. Commissioner,52 T.C. 880 (1969). However, petitioner has entirely failed to show how much, if any, of the sums withdrawn from the NBT Trust Account and the Mineral Bank account were spent for business related expenses. Without some indication of the amount of the business-related loss, we cannot allow a deduction. The third issue for our consideration is whether petitioners are liable for an addition to tax pursuant to section 6654 for underpayment of estimated tax. Where payments of tax, either through withholding or by the payment of estimated tax during the course of the year, do not equal the percentage of total tax liability required under the statute, imposition of the addition to tax is mandatory, unless the taxpayer shows that one of several statutory exceptions applies. Section 6654; Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Since petitioner made no effort to introduce evidence on this issue, we sustain respondent's determination of the addition to tax pursuant to section 6654. *313 Reaver v. Commissioner,42 T.C. 72, 83 (1964). The fourth and final issue for our consideration is whether petitioners are liable for an addition to tax pursuant to section 6661 for the taxable year 1982. Section 6661 imposes an addition to tax of 25 percent of any underpayment attributable to a substantial understatement in income tax. A substantial understatement in tax is defined as an understatement equal to the greater of $ 5,000 or ten percent of the tax required to be shown on the return. Here, the deficiency, in the amount of $ 12,421.40, meets the threshold test. Section 6661(b)(2)(B) provides for a reduction in the amount of the understatement of tax attributable to (a) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment or (b) any item with respect to which the relevant facts affecting the item's tax treatment is adequately disclosed in the return or in a statement attached to the return. Here, petitioners did not have substantial authority for failing to report the income received from the NBT Trust Account in their taxable income and did not disclose the omission on or with their return. *314 Accordingly, petitioners are liable for the section 6661 addition to tax to the extent of 25 percent of the underpayment. In determining the amount of the underpayment, such amount is to be reduced by the amount of taxes withheld from petitioner's wages. Woods v. Commissioner,91 T.C. 88 (1988). In light of the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. By Amendment to Answer, respondent recomputed the amount of the addition to tax pursuant to section 6661↩ after section 8002(b) of the Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874 which increased the percentage to be applied from 20 percent to 25 percent. The original figure had been $ 967.30.
3. Respondent conceded adjustments in the deficiency amounts set forth in the statutory notice of deficiency for taxable years 1981 and 1982 in the amounts of $ 3,189.21 and $ 3,100, respectively. Furthermore, the parties agree that petitioners are not liable for an addition to tax pursuant to section 6661↩ for taxable year 1981. 4. Respondent conceded that petitioners were not liable for an addition to tax pursuant to section 6653(a)(1) for taxable years 1981 and 1982 leaving us to decide whether petitioners are liable for an addition to tax pursuant to section 6653(a)(2). However, section 6653(a)(2) has no vitality or effect without the application of section 6653(a)(1) and we will not consider this issue further. Furthermore, respondent also determined in the statutory notice of deficiency an addition to tax for self-employment tax for taxable years 1981 and 1982, and determined a deficiency with respect to some portion of sums received by petitioners as unemployment compensation in taxable years 1981 and 1982. However, both of these determinations are purely mathematical where, as here, petitioners offer no proof or argument. The determination, then, depends only on whether we determine that petitioners had additional taxable income during the years in issue. Thus, these issues need not be discussed above.↩
5. Soon after trial petitioners filed a Motion to Amend Pleadings to Conform to Proof Pursuant to Rule 41(b) to which respondent did not object. Such motion was taken under advisement and is herein granted.↩
6. In describing the transactions at issue here, we may use such terms as "borrow," "loan" or "debt" but we do so merely for convenience, not intending to make an inference regarding the tax characterization or consequences of any transaction so described.↩