# United States Tax Court

T.C. Memo. 2025-131

MARK L. FUSSELL,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 9700-23.                    Filed December 18, 2025.

————

Mark L. Fussell, pro se.

*Alei A. Carrington*, *Lesley A. Hale*, and *Sharyn M. Ortega*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

JENKINS, *Judge*: In a statutory Notice of Deficiency (SNOD) dated March 20, 2023, the Internal Revenue Service (IRS) determined a federal income tax deficiency for petitioner's 2018 tax year of $38,662, as well as additions to tax of $8,699 under section 6651(a)(1),[1] $8,892 under section 6651(a)(2), and $1,254 under section 6654. The issues for decision are (1) whether petitioner failed to report taxable income, including amounts received for work as nonemployee compensation; (2) whether petitioner is entitled to deduct purported business expenses related to his work; (3) whether petitioner is entitled to a bad debt deduction or a net operating loss (NOL) deduction corresponding to a business bad debt loss purportedly sustained in an earlier year;

———

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[*2] (4) whether petitioner is liable for an addition to tax under section 6651(a)(1); (5) whether petitioner is liable for an addition to tax under section 6651(a)(2); and (6) whether petitioner is liable for an addition to tax under section 6654.

## FINDINGS OF FACT

The following facts are derived from the pleadings and the documents and testimony admitted into evidence at trial. Petitioner resided in California when his Petition was timely filed.

I.     *Purported Investment*

According to petitioner, his federal income tax troubles stem from a business venture extending back approximately 20 years. In December 2004, Velidom, Inc. (Velidom), was incorporated to operate as a developer of computer software products. Under a Common Stock Purchase Agreement with an effective date of December 16, 2004, petitioner, who was the chief executive officer of Velidom, agreed to purchase 20 million shares of Velidom's common stock in exchange for $80,000. Accordingly, petitioner describes Velidom as a "tightly-held" corporation.

Petitioner alleges that, following the 2004 common stock purchase, Velidom was partially funded through purported debt financing transactions. Specifically, petitioner alleges that he, through a sole proprietorship that he operated as a computer software development consultant, lent Velidom $420,000. In support of the purported loans, and in an effort to distinguish them from capital contributions, petitioner provided evidence of four checks drawn on a bank account in his name that he alleges is a separate business account related to his sole proprietorship. The checks, for $60,000, $40,000, $20,000, and $30,000, are made payable to Velidom on various dates throughout the third and fourth quarters of 2005. The memo line of the checks identifies each as a "Note Record." As further support for the purported loans, petitioner provided an undated document with payment instructions "on account of the Notes," which references a note amount of $150,000 and a warrant amount of $37,500. He also provided an undated letter referencing a Note and Warrant Purchase Agreement with an attached spreadsheet showing a $150,000 note amount corresponding to petitioner and a list of four additional investors who wrote checks made payable to Velidom in November 2005 totaling approximately $225,000.

**[\*3]** According to petitioner, Velidom functionally dissolved in "about 2008" because its "product failed and investment activities ended." Petitioner further explained that Velidom "didn't have any significant other sources of income." On January 14, 2014, Velidom issued a Notice of Dissolution and Winding Up of Velidom, Inc., indicating that Velidom had dissolved on June 5, 2013. The notice further instructed creditors to submit claims against Velidom no later than February 28, 2014, and indicated that "there are no assets of any value, cash or otherwise."

II.   *Petitioner's Initial Reporting*

In November 2015, petitioner and his spouse filed Forms 1040X, Amended U.S. Individual Income Tax Return, for the 2012, 2013, and 2014 tax years. Petitioner provided unsigned copies of the Forms 1040X, each of which contains the following explanation of changes:

> The business gave several loans amounting to $420K to another venture (Velidom Corporation) which gave final notice of dissolution in 2015, with no payment on the $420K. These losses are being applied to the current and three previous years based on the size of the business income for that year.
>
> 2012: Earned about $120K, loss on loans $60K.
>
> 2013: Earned about $330K, loss on loans $170K.
>
> 2014: Earned about $280K, loss on loans $140K.
>
> 2015: Expected earnings of about $100K. Loss on loans $50K.
>
> Schedule C and the dissolution notice are attached.

Consistent with that explanation, the Forms 1040X and the Schedules C, Profit or Loss From Business, attached to them reported as follows:

**[\*4]**

| | *2012* | *2013* | *2014* |
|---|---|---|---|
| Schedule C, Line 7, Gross income | $118,518 | $325,529 | $277,705 |
| Schedule C, Line 28, Total expenses before expenses for business use of home | 62,193 | 181,500 | 223,283 |
| Schedule C, Part V, Other Expenses, as "Loss on loans to Velidom" | 60,000 | 170,000 | 140,000 |
| Form 1040X, Line 5, Taxable income, Column C, Correct amount | 166,110 | 108,103 | 44,313 |
| Form 1040X, Line 21 ("amount overpaid") | 22,492 | 61,194 | 25,712 |

On April 25, 2016, the IRS issued a Notice CP21B indicating that the adjustments to business income (or loss) that petitioner requested were made for the 2012 tax year and that he was due a refund. According to petitioner, although the Notice CP21B referenced only the 2012 tax year, he assumed that because the Forms 1040X for 2012, 2013, and 2014 included identical information about the purported bad debt loss in the explanation of changes, similar changes to business income (or loss) for the 2013 and 2014 tax years would be allowed.

III.   *Prior Tax Court Case*

However, rather than issuing Notices CP21B related to the 2013 and 2014 tax years, in 2016, the IRS initiated an examination of petitioner's 2013 and 2014 income tax returns. That examination ultimately led to a case before this Court, under Docket No. 7877-17, for those tax years (Prior Case). The Court may take judicial notice of other Tax Court proceedings "if those proceedings have a direct relation to matters at issue." *Leyshon v. Commissioner*, T.C. Memo. 2015-104, at \*16 (quoting *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)), *aff'd*, 649 F. App'x 299 (4th Cir. 2016); *see also* § 7453; Fed. R. Evid. 201(c)(1); Rule 143(a).

The IRS determined income tax deficiencies for the 2013 and 2014 tax years after auditing the federal income tax returns jointly filed by petitioner and his spouse. On January 5, 2017, the IRS issued a Notice of Deficiency. The related Form 886–A, Explanation of Items, demonstrates that the IRS examined Schedule C items related to petitioner's sole proprietorship for 2013 and 2014 and determined that although petitioner originally correctly reported business income for 2013, he underreported business income for 2014. The Form 886–A did not address the issue of bad debts, and the IRS did not adjust business deductions or losses for 2013 or 2014 on the basis of the Forms 1040X that petitioner and his spouse filed in 2015.

**[\*5]**　On April 10, 2017, petitioner and his spouse filed a petition in response to the notice of deficiency, arguing that the purported loans to Velidom became unrecoverable after Velidom's "net losses . . . caused it to go bankrupt" and that a deduction for business bad debts should be allowed under section 166. According to the IRS, this "new issue of bad debt" was considered after petitioner raised it in the petition, but petitioner and his spouse "did not provide sufficient documentation to support [the] claimed additional deductions" for 2013 and 2014. Specifically, explained the IRS, petitioner and his spouse had provided only "a few letters allegedly showing loans were made and showing that petitioners purchased stock in Velidom Inc."

The parties eventually reached a settlement, and the Court entered a stipulated decision on March 9, 2018. The stipulated decision provided that "[p]ursuant to the agreement of the parties in this case . . . there are no deficiencies in income tax due from, nor overpayments due to, petitioners for the taxable years 2013 and 2014." And, consistent with that decision, according to IRS Account Transcripts, there were no adjustments or refunds for those years. Petitioner and his spouse signed the stipulated decision on February 27, 2018, well before the return for the 2018 tax year was due.

IV.　*Petitioner's Subsequent Reporting*

IRS Account Transcripts reflect the following actions after entry of the stipulated decision in the Prior Case: (1) in August 2018, the IRS issued a Notice CP59[2] for the 2016 tax year; (2) on September 28, 2018, the IRS received petitioner's 2015 Form 1040, U.S. Individual Income Tax Return; (3) on November 5, 2018, the IRS received petitioner's 2017 Form 1040; and (4) in December 2019, the IRS issued a Notice CP59 for the 2018 tax year.

According to IRS Account Transcripts, petitioner's Forms 1040 for his 2015 and 2017 tax years reported the following amounts:

|                       | *2015*    | *2017*    |
|-----------------------|-----------|-----------|
| Adjusted Gross Income | $276,415  | $287,639  |
| Taxable Income        | 270,115   | 247,890   |

---

[2] A Notice CP59 is sent when a taxpayer fails to file a return for a year.

[*6] V.     *Current Case*

Petitioner did not file Form 1040 for his 2016 or 2018 tax year. He indicated that his failures to file are a result of "delays in the IRS reviewing 1040 & 1040x filing information for years 2013-2015." In 2022, pursuant to section 6020(b), the IRS prepared a Substitute for Return (SFR) for petitioner's 2018 tax year based upon information received from third parties and reflected on an IRS Wage and Income Transcript. Using this information, the IRS issued the SNOD, which determined that petitioner had received gross income of $130,052, comprising nonemployee compensation of $128,999, interest income of $66, and prior year state refunds of $987. The SNOD allowed the 2018 standard deduction of $12,000. At trial, petitioner conceded receipt of all income items reported for the 2018 tax year.

OPINION

I.     *Burden of Proof*

Generally, the Commissioner's determinations in a Notice of Deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In cases of unreported income, the Commissioner must establish an evidentiary foundation with substantive evidence that the taxpayer received unreported income and has a connection with the income-producing activity. *See Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985); *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019). Once the Commissioner makes the required threshold showing, the burden typically shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. *See Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Rapp v. Commissioner*, 774 F.2d at 935. If a taxpayer asserts a reasonable dispute with respect to an item of income reported on a third-party information return and has fully cooperated with the Secretary, the Commissioner has the burden of producing reasonable and probative information concerning the deficiency in addition to the information return. § 6201(d).

Petitioner does not dispute receipt of the income reflected on the IRS Wage and Income Transcript and the SFR but instead argues that he is entitled to deductions offsetting that income. Accordingly, respondent has sufficiently linked petitioner to the income-producing activities, and section 6201(d) does not apply. Furthermore, because

**[\*7]** deductions are a matter of legislative grace, petitioner bears the burden of proving entitlement to any deduction claimed. *See* Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992).

## II.    *Overview of Parties' Arguments*

Although petitioner claimed that "[w]ork expenses associated with the income in 2018 make the net income zero," the only such deduction with respect to which he chose to elaborate was that related to a business bad debt loss with respect to the purported Velidom loans. As noted, petitioner argues that unused business bad debt losses with respect to his purported loans to Velidom may be carried forward to offset his income for the 2018 tax year. Respondent argues that the purported loans constitute either a gift or a capital contribution to a closely held corporation rather than a bona fide debt. Respondent further argues that, assuming arguendo that the loans do constitute bona fide debt, the IRS's unreviewed acceptance of the deduction with respect to the loans on the 2012 Form 1040X does not obligate respondent to accept deductions for the 2018 tax year.

Given that a loss with respect to the purported loans is not alleged to have been sustained in 2018, this Court considers first whether petitioner may have been entitled to a deduction with respect to such a loss for any year and then, if so, whether such a loss could have resulted in a deduction for the 2018 tax year. Finally, it considers the additions to tax.

## III.    *Bad Debt Deductions*

### A.    *Applicable Rules*

#### 1.    *Section 165 vs. Section 166*

Section 165 permits an individual a deduction for a loss sustained during the taxable year, if the loss (1) is not compensated for by insurance or otherwise and (2) is incurred in a trade or business or any transaction entered into for profit, or arises from fire, storm, shipwreck, or other casualty, or from theft. § 165(a), (c). Section 165(g) provides special rules for worthless securities. Section 166 permits a deduction for a bona fide debt that becomes worthless within the taxable year, § 166(a), but it does not apply to a debt evidenced by a security as defined in section 165(g), § 166(e). Petitioner has neither alleged, nor provided evidence, that Velidom issued notes with interest coupons or in registered form, as required by section 165(g)(2)(C) to constitute a

**[\*8]** security. And petitioner explicitly argued in the Prior Case that section 166 should apply. Accordingly, this Court focuses on the applicability of section 166. *Cf. Spring City Foundry Co. v. Commissioner*, 292 U.S. 182, 189 (1934) (concluding that the predecessors to sections 165 and 166 were "mutually exclusive").

### 2. *Bona Fide Debt*

Section 166(a)(1) allows as an ordinary loss deduction any bona fide debt that becomes worthless within the taxable year, except in the case of certain nonbusiness debts defined in section 166(d). A bona fide debt is a debt that "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." *Zimmerman v. United States*, 318 F.2d 611, 612 (9th Cir. 1963) (quoting Treas. Reg. § 1.166-1(c)); *accord Kean v. Commissioner*, 91 T.C. 575, 594 (1988); Treas. Reg. § 1.166-1(c). A contribution to capital is not considered to give rise to a debt for purposes of section 166. *Kean*, 91 T.C. at 594.

The Court's inquiry typically focuses on whether there was an intention to create a debt and require repayment thereon. *Litton Bus. Sys., Inc. v. Commissioner*, 61 T.C. 367, 377 (1973). "The outward form of the transaction is not controlling; rather, characterization depends on the taxpayer's actual intent, as evidenced by the circumstances and conditions of the advance." *Bauer v. Commissioner*, 748 F.2d 1365, 1367–68 (9th Cir. 1984), *rev'g* T.C. Memo. 1983-120.

The Court of Appeals for the Ninth Circuit has identified 11 factors that may be relevant in determining whether a transfer to a corporation by a shareholder is a debt or a contribution to capital. *See Hardman v. United States*, 827 F.2d 1409, 1412 (9th Cir. 1987). The factors are (1) the names given to the certificates evidencing purported debt; (2) the presence or absence of a maturity date; (3) the source of the payments servicing the purported debt, and in particular whether they are dependent upon earnings; (4) the right to enforce payment of principal and interest; (5) whether the amounts transferred increase participation in management; (6) whether the "lender" has a status equal or inferior to that of regular creditors; (7) the parties' intent, as evidenced by objective indicators; (8) whether the "borrower" is thinly or adequately capitalized; (9) the extent to which the funds advanced are proportional to the shareholder's capital interest; (10) the extent to which interest payments come from "dividend" money; and (11) the ability of the "borrower" to obtain loans from outside lending

[*9] institutions. *See id.* at 1411–14. Not all factors are necessarily relevant, no single factor is controlling or decisive, and the analysis is based on the particular circumstances of each case. *See id.* at 1412. "The object of the inquiry is not to count factors, but to evaluate them." *Id.* (quoting *Bauer v. Commissioner*, 748 F.2d at 1368). The taxpayer has the burden of establishing that transfers are loans rather than capital contributions. *Bauer v. Commissioner*, 748 F.2d at 1368 (citing *O.H. Kruse Grain & Milling v. Commissioner*, 279 F.2d 123, 125 (9th Cir. 1960), *aff'g* T.C. Memo. 1959-110).

### 3. *Worthlessness*

If a taxpayer can establish that there is a bona fide debt, it must be determined, on the facts and circumstances of the case, when the debt became worthless for purposes of the bad debt deduction. *Crown v. Commissioner*, 77 T.C. 582, 598 (1981). A bad debt deduction is permitted only for the year in which a debt becomes worthless. *See Denver & Rio Grande W. R.R. Co. v. Commissioner*, 32 T.C. 43, 56 (1959), *aff'd*, 279 F.2d 368 (10th Cir. 1960). A debt will generally be considered worthless when it can be reasonably expected that the debt is without possibility of future payment and that legal action to enforce the debt would not result in satisfaction. Treas. Reg. § 1.166-2(b). A determination of worthlessness is based on objective standards, and worthlessness is generally demonstrated by identifiable events that create reasonable grounds for abandoning any hope of recovery. *See Am. Offshore, Inc. v. Commissioner*, 97 T.C. 579, 593 (1991); *Dustin v. Commissioner*, 53 T.C. 491, 501 (1969), *aff'd*, 467 F.2d 47 (9th Cir. 1972); *Dallmeyer v. Commissioner*, 14 T.C. 1282, 1291–92 (1950). A taxpayer's subjective belief that the debt is unrecoverable is insufficient to support a determination of worthlessness. *Fox v. Commissioner*, 50 T.C. 813, 822–23 (1968). The taxpayer must show sufficient objective facts from which the Court can conclude that the debt is worthless. *Id.*

### 4. *Nature of Debt*

If a bona fide debt becomes worthless during the year, it must be determined whether it is a business debt or a nonbusiness debt. *See* § 166(d); Treas. Reg. § 1.166-5. Accordingly, a taxpayer must establish the relationship of a bad debt to the taxpayer's trade or business. *See Putoma Corp. v. Commissioner*, 66 T.C. 652, 673 (1976), *aff'd*, 601 F.2d 734 (5th Cir. 1979).

[*10]  B.     *Application to Purported Velidom Loans*

1.     *Bona Fide Debt*

Petitioner offers as support for the treatment of the purported Velidom loans as bona fide debt (1) an undated letter that references a Note and Warrant Purchase Agreement, (2) the references to a "Note" in memo lines on checks made payable to Velidom, and (3) documents related to payments to Velidom. However, petitioner has not provided a copy of any loan agreements or promissory notes. Neither has he provided details regarding interest or maturity terms. Further, he did not provide (1) any documentation confirming that the checks were deposited by Velidom, (2) any documentation supporting any loan advances to Velidom in excess of $150,000, or (3) any documentation of the subsequent history with respect to his purported loans, such as interest payments or principal repayments.

The absence of loan agreements and notes or other instruments favors respondent. *See Calumet Indus., Inc. v. Commissioner*, 95 T.C. 257, 286 (1990). Petitioner has not provided evidence of or alleged that there was a fixed repayment schedule, nor has he produced any records of the repayments. Indeed, petitioner acknowledges on the Forms 1040X for 2012, 2013, and 2014 that the final balance on the loans was the same as the amount advanced, suggesting that over the span of approximately a decade—from 2005 through 2015—there were no repayments on the purported loans. The lack of repayment, in addition to petitioner's admission that Velidom did not have any significant sources of funds other than the loan amounts, suggests that repayment of the purported loans was possible only out of Velidom's earnings. This indicates that the transfers did not constitute bona fide loans. *See Dunnegan v. Commissioner*, T.C. Memo. 2002-119, 2002 WL 982377, at *4.

This Court does not believe that in a genuine debtor-creditor relationship, petitioner would have failed to retain any loan agreement or promissory note or any documentation whatsoever of payments on the purported loans in the ten years between when the loans were supposedly extended and when petitioner claims they became worthless. *See Zimmerman*, 318 F.2d at 613. Furthermore, petitioner's assertion that the purported loans remained outstanding in full after ten years belies the notion that there was ever an intention to require repayment. *Cf. Bauer v. Commissioner*, T.C. Memo. 1998-133, 1998 WL 155535, at *3 (finding bona fide debt despite the lack of documentation because

**[\*11]** actual repayment and demands therefor supported an intent to require repayment). Accordingly, this Court concludes that petitioner has not established that there was bona fide debt.

### 2.     *Worthlessness*

Because this Court concludes, on the evidence provided, that a bona fide debt did not exist, it is not necessary to determine whether such a debt became worthless and when. However, assuming arguendo that petitioner could prove the purported loans were bona fide debts, it is unclear when those debts would have become worthless. Petitioner testified that Velidom functionally dissolved in 2008, such that worthlessness may potentially be considered to have occurred then. Furthermore, Velidom's 2014 notice of dissolution indicated that it had dissolved in 2013 and that it had no cash at the time of the notice, suggesting that worthlessness could potentially have occurred in 2013 or 2014. It does, however, instruct creditors to file claims, such that subsequent consideration of those claims could be consistent with a 2015 final dissolution, as petitioner stated in the explanation of changes on his Forms 1040X. Having provided no additional elaboration, petitioner did not establish in which year the purported loans became worthless.

### 3.     *Reliance on Prior Years*

Petitioner contends that the IRS had agreed with the bad debt deduction in processing his 2012 amended return. However, processing of an amended return does not necessarily indicate IRS agreement with it any more than does processing of an original return. Furthermore, each tax year stands alone and must be separately considered. *See Pekar v. Commissioner*, 113 T.C. 158, 166 (1999) (citing *United States v. Skelly Oil Co.*, 394 U.S. 678, 684 (1969)). The IRS is not bound to allow any tax benefit simply because it was permitted for a prior year. *Id.* And the subsequent audit for the 2013 and 2014 tax years and related litigation already made clear the lack of IRS agreement with petitioner's position concerning bad debt losses. Accordingly, the IRS's treatment of petitioner's 2012 amended tax return is of no consequence.

### C.     *NOL Deductions*

Section 172(a) allows a deduction for the aggregate of NOL carrybacks and carryovers to a taxable year. Generally, an NOL is the excess of allowable deductions over gross income for a given tax year, computed with certain modifications specified in section 172(d). § 172(c). To carry over or carry back an NOL, a taxpayer must prove the amount

**[\*12]** of the NOL and the amount of the NOL carryover or carryback to a particular year, taking into account its potential use for another year. *See* § 172(c), (b)(2); *Keith v. Commissioner*, 115 T.C. 605, 621 (2000). Absent an election to the contrary, *see* § 172(b)(3), an NOL for a taxable year must first be carried back 2 years and then may be carried forward up to 20 years, *see* § 172(b)(1)(A), (2).[3] Petitioner can be understood to have taken the position that he was entitled to first carry back and then carry over an NOL arising from the bad debt deduction that he claimed with respect to the purported Velidom loans. However, given that he has failed to establish that he was entitled to a bad debt deduction, he has consequently failed to establish that he had an NOL with respect to which he might be entitled to carrybacks and carryovers. *See Deutsch v. Commissioner*, T.C. Memo. 2012-318, at \*17–19.

Moreover, even if petitioner had been entitled to a bad debt deduction, his own reporting indicates that he would not have been entitled to an NOL deduction for the 2018 tax year. Section 172(b)(2) provides that "[t]he portion of [the NOL] which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried." Petitioner's own reporting reflected more than $300,000 of aggregate taxable income remaining for the 2012 through 2014 tax years after aggregate claimed deductions for bad debts or NOLs of $370,000. Thus, the $50,000 NOL hypothetically remaining would nevertheless clearly have been required to be used for such years. Therefore, if petitioner had actually been entitled to a $420,000 bad debt deduction as a result of the Velidom loans in 2014, consistent with his carrying back an NOL to 2012, no deductions stemming from the purported Velidom loan worthlessness should have been available to carry to future tax years. Even if the NOL had arisen in 2015, petitioner's reporting with respect to 2015 and 2017 indicates that none of the NOL would have remained to be carried to 2018. And, of course, if worthlessness had actually occurred in 2013 or 2008, the NOL would have been absorbed even sooner. Given the mandate of section 172(b)(2), it would have been irrelevant that petitioner did not

---

[3] In 2017, section 172(b)(1)(A) was amended to repeal carryback periods and allow only carryovers for NOLs for taxable years beginning after December 31, 2017. *See* Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 13302(b)(1), 131 Stat. 2054, 2122 (2017). However, an NOL and the carryback and carryover periods with respect thereto are determined taking into account the law applicable for the year in which the NOL arose, without regard to the law applicable for other years to which losses are carried back or forward. *See Reo Motors, Inc. v. Commissioner*, 338 U.S. 442, 446 (1950); Treas. Reg. § 1.172-1(e)(1) and (2).

**[\*13]** claim the full amount to which he was purportedly entitled for the relevant years. *See Newton v. Commissioner*, 57 T.C. 245, 247–48 (1971). Therefore, even if petitioner could persuade this Court that he was entitled to a $420,000 section 166(a) deduction with respect to the Velidom loans, he would not, as a result thereof, be entitled to an NOL deduction for his 2018 tax year.

IV.    *Additions to Tax*

The Commissioner has the burden of producing evidence with respect to the liability of any individual for any addition to tax. § 7491(c). To satisfy that burden, the Commissioner must offer sufficient evidence to indicate that imposing the addition to tax is appropriate. *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001).

Section 6651(a)(1) imposes an addition to tax for the failure to file an income tax return by the due date (including extensions). To satisfy the burden of production for the addition to tax under section 6651(a)(1), the Commissioner must show that the taxpayer did not file a return by the due date. *See Wheeler v. Commissioner*, 127 T.C. 200, 207–08 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008). Section 6651(a)(2) imposes an addition to tax for failing to pay taxes when due. To satisfy the burden of production for the addition to tax under section 6651(a)(2), the Commissioner must show that an income tax return was filed, or an SFR was prepared, showing the tax liability for the relevant year. *See Wheeler*, 127 T.C. at 210. If the Commissioner satisfies the burden of production for additions to tax under section 6651(a), the taxpayer bears the burden of proving the additions to tax are inappropriate. *Wheeler*, 127 T.C. at 206; *Higbee*, 116 T.C. at 446–47; *see also* § 6651(a)(1) and (2). A taxpayer may demonstrate that additions to tax are inappropriate by establishing reasonable cause, which requires showing that, despite exercising ordinary business care and prudence, the taxpayer was unable to file the return or pay the tax, as applicable, on time, typically for reasons outside the taxpayer's control. Treas. Reg. § 301.6651-1(c)(1).

Petitioner concedes that he did not file an income tax return for the 2018 tax year. The IRS consequently prepared an SFR for 2018 and the record contains a copy of the SFR and a certification validating the SFR. *See* § 6020(b); Treas. Reg. § 301.6020-1(b)(2). The SFR shows unreported gross income, which petitioner concedes he received, and petitioner's tax liability for the 2018 tax year. Accordingly, respondent has satisfied the burden of production with respect to the section 6651(a)(1) and (2) additions to tax.

**[\*14]** Generally, if a taxpayer fails to raise the issue of additions to tax in his pleadings, he is deemed to have conceded it. *See Funk v. Commissioner*, 123 T.C. 213, 218 (2004). Petitioner did not specifically address the additions to tax at issue in this case in his pleadings. However, the Petition attempts to justify petitioner's failure to file an income tax return for the 2018 tax year by arguing that the IRS had not yet processed his amended returns for the 2013 and 2014 tax years, indicating that the failure to file was a result of "delays in the IRS reviewing 1040 & 1040x filing information for years 2013-2015." Petitioner also argued that any amount owed for the 2018 tax year could be satisfied with the refunds he claimed to be owed related to his 2013 and 2014 tax years. However, ongoing audits or other actions before the IRS did not provide petitioner with justification to delay the filing of his 2018 income tax return. *See Glowinski v. Commissioner*, 25 T.C. 934, 936 (1956), *aff'd per curiam*, 243 F.2d 635 (D.C. Cir. 1957); *see also Rahall v. Commissioner*, T.C. Memo. 2011-101, 2011 WL 1848540, at \*10; *Owens v. Commissioner*, T.C. Memo. 2001-143, 2001 WL 686945, at \*8; *Likes v. Commissioner*, T.C. Memo. 1991-286. Accordingly, this Court concludes that petitioner's filing and payment failures were not due to reasonable cause.

Section 6654(a) imposes an addition to tax on an individual for failure to make required estimated tax payments. This addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. § 6654(c) and (d). Each required installment is generally equal to 25% of the "required annual payment." § 6654(d). The required annual payment is equal to the lesser of (1) 90% of the tax shown on the return for the tax year at issue (or, if no return is filed, 90% of the tax for such year) or (2) if the individual filed a return for the immediately preceding tax year, 100% (or in certain circumstances 110%) of the tax shown on that return. § 6654(d)(1); *see Wheeler*, 127 T.C. at 210–11. To satisfy the burden of production for the addition to tax under section 6654, the Commissioner must show that the taxpayer had a required annual payment. *See Wheeler*, 127 T.C. at 211. To do so, the Commissioner must establish the tax shown on the taxpayer's return for the preceding year or demonstrate that the taxpayer filed no such return. *See id.* at 212; *Harvey v. Commissioner*, T.C. Memo. 2023-95, at \*6–7; *Collins v. Commissioner*, T.C. Memo. 2020-50, at \*47.

Respondent has established that petitioner filed an income tax return for the 2017 tax year, that he failed to file an income tax return for the 2018 tax year, and that he had an actual tax liability for 2018

**[\*15]** but failed to make the required payments. Therefore, petitioner's required annual payment for 2018 is 90% of the tax owed for that year. Respondent has satisfied the burden of production with respect to an addition to tax under section 6654(a). Section 6654 has no general exception for reasonable cause, and petitioner has not shown that he satisfied any of the statutory exceptions under section 6654(e). *See Mendes v. Commissioner*, 121 T.C. 308, 323 (2003). Accordingly, petitioner is liable for the addition to tax under section 6654(a) for tax year 2018.

V. *Conclusion*

This Court has considered the arguments of the parties not specifically addressed in this Opinion and concludes that they are either without merit or irrelevant. For the reasons discussed herein, this Court holds that petitioner is not entitled to a deduction for his 2018 tax year related to the purported Velidom loans. Accordingly, this Court will sustain the determinations in the Notice of Deficiency.

To reflect the foregoing,

*Decision will be entered for respondent.*